UTAH HOTEL CO. v. INDUSTRIAL COMMISSION et al.

No. 6648. Decided August 28, 1944. (151 P. 2d 467.)

See 16 C. J. S. Constitutional Law Sec. 171, 42 Am. Jur. 507.

*Judd, Ray, Quinney & Nebeker,* of Salt Lake City, for plaintiff.

*Grover A. Giles,* Atty. Gen., *Fred F. Dremann,* of Salt Lake City, and *Zar E. Hayes,* Asst. Atty. Gen., for defendants.

WOLFE, Chief Justice.

Certiorari to review an order of the Industrial Commission holding the petitioner liable under Title 42, Chapter 2a, U. C. A. 1943, for certain contributions to the unemployment compensation fund.

The petitioner, Utah Hotel Company, operates the Hotel Utah at Salt Lake City. In connection with the hotel and

in the same building, the petitioner operates various dining rooms which are equipped for dancing. For the entertainment of its guests and others, it conducts dancing as well as serving meals and refreshments. In the operation of the dining services and dancing facilities, it furnishes bands, orchestras, and other entertainers for the pleasure of its patrons. These bands usually fall into two groups or classifications. Some made up of local musicians were called "local bands." Others known as "name bands" or "traveling bands" were made up and organized outside of the state and had acquired a degree of prominence and notoriety extending outside of their home state. These latter bands or orchestras performed under a trade name, usually the name of their leader, who had attained national or near national reputation as a leader and conductor of dance orchestras.

The arrangements for the appearance of these bands or orchestras, usually for periods of one to three month stands, were made by the hotel management. In addition, the hotel occasionally brought in special entertainers or features, usually traveling artists for a one night stand. For convenience, these various types will be referred to hereafter as "local bands," "name bands" and "specialty features." The hotel paid the salary or earnings of each of these groups during their stands. About 1938 some difference arose between the hotel company and the Industrial Commission regarding liability for unemployment taxes on the amount paid these musicians and entertainers, with the result that in 1939 lawsuits were pending between them in the District Court of Salt Lake County, and in the State Supreme Court and some matters were still pending before the Industrial Commission. In that year the hotel company and the Industrial Commission, through its Department of Employment Security, entered into an oral agreement by way of settlement of the suits and matters then pending in the courts and before the Commission. The substance of the agreement was that plaintiff was to pay unemployment taxes on all members of "local orchestras"

made up of local talent—or what might be called intrastate orchestras, but would not be required to pay any taxes on "name bands"—or what might be considered interstate orchestras. Until the filing of the claims involved in the present action, the parties operated under this agreement.

In 1941, the manager of the hotel company, while in California, engaged Freddy Nagel's orchestra for a four weeks stand at the Hotel Utah. This is admittedly a "name band." The agreement was made with Nagel or with his booking agency. None of the other members of the orchestra were contacted personally or consulted by the hotel manager. Nagel's orchestra filled its engagement at the hotel. The hotel company paid over the agreed price to Nagel and he in turn paid the players their portions. Roy Edward Crawford, a member of the orchestra, subsequently being unemployed, filed a claim for unemployment benefits, which the Industrial Commission allowed and called upon the hotel company to pay into the unemployment compensation fund, payroll taxes covering the amount paid to Nagel's orchestra. The company disputed liability and this presents case number one.

Another matter arising at about the same time involves what are called "specialty features" procured by the hotel company for the entertainment of its guests. Contracts for these attractions are made through a local booking agency, and there is no contract between the hotel company and the performers until they arrive. These are usually one night stands, the performers being on tour through the country under direction of booking managers. The Industrial Commission ordered the hotel company to remit to it payroll taxes on all these acts, which the hotel company contests, and presents case number two. The order of the commission in both cases was retroactive to the third and fourth quarters of 1940. By stipulation of the parties the two matters are consolidated and presented as a single case.

The petitioner raises the point that it was not required under the Employment Security Act, Title 42, Chapter 2a,

U. C. A. 1943, to pay contributions into the Unemployment Compensation Fund money paid either to the "name bands" or to the "speciality features." Under the holding of this court in *Singer Sewing Machine Co.* v. *Industrial Comm.*, 104 Utah 175, 134 P. 2d 479 (on petition for rehearing, 104 Utah 196, 141 P. 2d. 694, 695), it cannot be successfully contended that the "name bands" or the "speciality features" were not performing "services" for "wages" as those terms are defined by the act. The interpretation and construction of the act as set forth in the Singer Sewing Machine case are controlling here. In the opinion written on petition for rehearing, supra, we said that the Employment Security Act includes relationships not within the common law relationship of master and servant; that a service relationship exists whenever personal services are performed for wages; and that once such service relationship is found to exist, the provisions of Sec. 19 (j) (5) invoked "to determine whether or not the service relationship found to exist is one which is included within or one which is excluded from the operations of the Act. If such service relationship is one which meets, conjointly, the provisions of (a), (b) and (c) of Sec. 19 (j) (5) the employment is filtered or culled out from the operations of the act, and benefits cannot be received, nor does tax liability exist. If, however, the service relationship is one that does not meet conjointly the provisions of (a), (b) and (c) of 19 (j) (5) it remains as employment within the act and the employer is liable for the tax or contribution thereon."

Sec. 19 (j) (5) reads:

"Services performed by an individual for wages or under any contract or hire * * * shall be deemed to be employment subject to this act unless and until it is shown to the satisfaction of the commission that—

"(A) such individual has been and will continue to be free from control or direction over the performances of such services, both under his contract of hire and in fact; and

"(B) such service is either outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

"(C) such individual is customarily engaged in an independently established trade, occupation, profession, or busines of the same nature as that involved in the contract of service."

The service relationships involved herein meet the requirements of both (A) and (C). But the Act requires that the service relationships meet the requirements of (A), (B) and (C) *conjointly*. Singer Sewing Machine case, supra. The Commission's decision is based on the finding that the services herein involved did not meet the requirements of subsection (B).

It must be admitted that the services here performed were not "outside of all the places of business" of the petitioner, since the contracts all specifically provided that service should be rendered in the hotel. Nor were the services performed outside the usual course of the petitioner's business. The record abounds with evidence that it was usual and customary for the hotel to furnish entertainment in connection with the operation of its dining rooms and to furnish dance bands in connection with the operation of its dancing facilities. It thus appears that there was a service relationship, for wages, and that such relationship did not meet, conjointly, the requirements of Section 19 (j) (5). The Commission correctly held "name bands" and "speciality features" to be service relationships within the Act and that the hotel company was liable thereon for contributions to the unemployment compensation fund.

The petitioner next contends that the agreement between the Commission and the petitioner in settlement of similar disputes in 1939 was and is binding on the Commission and prevents recovery by the Commission in this case. This argument is not tenable. The agreement is at the most merely an administrative interpretation of the Act and of the petitioner's liability thereunder. The

Commission had the authority to interpret the Act, for such is a necessary condition precedent to its administration, but such interpretation was not binding. This is pointed out by Von Baur, "Federal Administrative Law," Sec. 73, 74, wherein it is stated:

"The nature of the administrative process in executing a statutory scheme requires that administrative agencies not only determine the administrative questions involved, but apply the law in the first instance as well—that is, that they also venture an initial decision on the judicial questions. Otherwise, as a practical matter, the agencies could not function. * * * A 'decision' or 'finding' by an administrative agency upon a judicial question is never a binding decision, for under the doctrines of supremacy of law and the separation of powers a binding decision of a question of law affecting private rights may only be made by an appropriate court acting judicially. Thus, although as a practical or procedural matter an administrative agency must venture a decision upon such a question of law, such questions are always open for independent judgment of an appropriate court acting judicially * * *. And a binding decision on a simple judicial question, such as a question of statutory construction, may only be made by an appropriate court acting judicially." See also Gellhorn, "Administrative Law—Cases and Comments," p. 313.

The point involved in the settlement of the earlier group of cases was whether, under Sec. 42-2a-19, the hotel company was an employer of the orchestra members or not. In the agreement the Commission concluded that "name bands" and "speciality features" were not within the statute. This was purely a question of law and the erroneous interpretation of the statute by the Commission could not have the effect of changing liability under the statute nor estopping the Commission from later changing its interpretation.

In so holding, we appreciate the fact that the hotel company is now in a position under which it will be penalized for abiding by and relying upon a regulation or interpretation of the Department of Employment Security. This interpretive agreement was, after all, promulgated by the state's own agency and the individual who chooses to conform to it rather than ignore it should not suffer from his law

abiding attitude even though he bases his actions on an invalid regulation. Therefore, as a general proposition we sympathize with the view that an individual should not have to run the risk of a change of administrative interpretation which may result in a retroactive change in regulations to his disadvantage. Although, in view of these factors a contrary result might seem to be a desirable one when applied to the facts of this particular case, the consequences which will flow from such a holding strike at the very heart of the relationships between administrative tribunals, the legislature and the courts.

We deem it essential to a clear understanding of the problems implicit in this matter to note at the outset that regulations of administrative tribunals are not all birds of a feather. A failure to note this fact will inevitably lead to hazy thinking and erroneous concepts. The weight which should be given to a prior administrative regulation will to a large extent be dependent upon the type of regulation involved. Regulations may be promulgated pursuant to a specific delegation of legislative power. In prescribing such regulations, the administrative tribunal, within designated limits, may actually be making the law or prescribing what the law shall be. In prescribing such a regulation the tribunal in effect legislates within the boundaries marked out for its action by legislative enactment. On the other hand, the administrative tribunal may, by adopting a given regulation, only purport to interpret what the legislature meant by its statutory language. Such a regulation is nothing but an administrative opinion as to what the statute under construction means. See Von Baur, "Federal Administrative Law," p. 487, Sec. 489, wherein it is stated that the interpretative regulation is nothing more "substantial than an administrative construction or interpretation of a general term in a statute—that is, an administrative guess at a judicial question."

From the statement of the case in the briefs of counsel, it is clear that the so-called regulation under construction

in this case is nothing more than an initial guess by the administrative tribunal as to what the statute (Sec. 42-2a-19) means. In the petitioner's brief it is stated that the "point determined did not involve the tax or the collection thereof, but rather involved deciding the question of whether, under Section 42-2a-19, the hotel company was an employer of orchestra members or not." As we have now determined that Section 42-2a-19 did make the hotel company an employer of orchestra members, it is difficult to see upon what basis it could be held that the erroneous administrative construction of this statute could change it. An administrative interpretation out of harmony and contrary to the express provisions of a statute cannot be given weight. To do so would in effect amend the statute. Construction may not be substituted for legislation. *United States* v. *Missouri Pac. R. Co.*, 278 U. S. 269, 49 S. Ct. 133, 73 L. Ed. 322.

In *Manhattan General Equipment Co.* v. *Commissioner of Internal Rev.*, 297 U. S. 129, 56 S. Ct. 397, 400, 80 L. Ed. 528, the court held that an administrative regulation which was contrary to the statutory provision was a nullity. In so holding, the court said:

"The power of an administrative officer or board to administer a federal statute and to prescribe rules and regulations to that end is not the power to make law * * * but the power to adopt regulations to carry into effect the will of Congress as expressed by the statute. A regulation which does not do this, but operates to create a rule out of harmony with the statute, is a mere nullity. (Citing cases.) And not only must a regulation, in order to be valid, be consistent with the statute, but it must be reasonable. (Citing cases.) The original regulation as applied to a situation like that under review is both inconsistent with the statute and unreasonable.

"The contention that the new regulation is retroactive is without merit. Since the original regulation could not be applied, the amended regulation in effect became the primary and controlling rule in respect of the situation presented. It pointed the way, for the first time, for correctly applying the antecendent statute to a situation which arose under the statute. See *Titsworth* v. *Commissioner of Internal Revenue*, 3 Cir., 73 F. 2d 385, 386. The statute defines the rights of the taxpayer and fixes a standard by which such rights are to be

measured. The regulation constitutes only a step in the administrative process. It does not, and could not, alter the statute. It is no more retroactive in its operation than is a judicial determination construing and applying a statute to a case in hand."

True, there is a statute (Title 26 U. S. C. A. Int. Rev. Code, § 3791 (b) expressly referring to the retroactive effect of Treasury Regulations. But the cases do not place the holding upon the language of the statute. In fact the court in the Manhattan case, supra, expressly states that it did not consider the regulation under consideration to be retroactive in effect. If it were not retroactive, a statute authorizing retroactive regulations could have had no effect upon the court's decision. The case stands clearly for the doctrine that when an administrative tribunal makes an "initial guess" as to what effect a statute has, that guess is not to any extent binding on the courts or upon the administrative tribunal which made said erroneous guess. When a new regulation is passed or when the statute is for the first time considered by the courts, it seems clearly correct to state that the new rulings are not retroactive, but that they are in fact but the first correct application of the law.

The difference in approach which should be taken when it appears that the administrative body is acting in a legislative capacity to interpret statutes or other regulations is stressed in *Arizona Gro. Co.* v. *Atchison, T. & S. F. R. Co.*, 284 U. S. 370, 52 S. Ct. 183, 186, 76 L. Ed. 348. The case turned upon the question of whether the Interstate Commerce Commission had the power to award reparations for shipments which had moved under rates which had been previously approved by said Commission. The Commission had established rates for the railroad, which rates were put into effect. Later the Commission determined that it had established a rate which was too high and ordered the railroad to lower its rates; it also ordered the railroad to pay reparations to shippers on the theory that the original rates which had been in effect had been too high. The court held that this could not be done. In so holding, the court said:

"The Commission's error arose from a failure to recognize that, when it prescribed a maximum reasonable rate for the future, it was performing a legislative function, and that, when it was sitting to award reparation, it was sitting, for a purpose judicial in its nature. In the second capacity, while not bound by the rule of res judicata, it was bound to recognize the validity of the rule of conduct prescribed by it, and not to repeal its own enactment with retroactive effect. It could repeal the order as it affected future actions and substitute a new rule of conduct as aften as occasion might require, but this was obviously the limit of its power, as of that of the Legislative itself."

While the distinction between the various types of administrative regulations has not yet crystallized in the court opinions, it is noted in a marked way in current legal writings. See Von Baur, Federal Administrative Law, p. 489; Alvord, Treasury Regulations and the Wilshire Oil Case, 1940, 40 Col. L. Rev. 252; Lee, Legislative and Interpretive Regulations, 1940, 29 Geo. L. J. 1; Feller, Addendum to the Regulations Problem, 1941, 54 Har. L. Rev. 1311; and articles cited therein.

In Alvord's article in 40 Col. L. Rev. 252, the distinction is clearly drawn. He notes that the issue is not one of nomenclature, but is far more fundamental. The article points out that "Legislative Regulations" are prescribed pursuant to a specific delegation of legislative power. They purport to prescribe for the future a rule of general application. They have the force and effect of law. On the other hand "Interpretive Regulations" are merely the administrator's construction of a statute. In the case of legislative regulations, the questions before a court for judicial determination, if a regulation is attacked, are only whether the delegation of power was valid, whether the regulation was within that delegation, and, if so, whether it was a reasonable regulation under a due process test. Alvord states that the courts will not and should not substitute their opinions for that of the administrative officials in determining the policy of legislative regulations. On the other hand, where an interpretive regulation is involved, the ultimate question before the court is: What does the statute mean?

In the Article by Lee in 29 Geo. L. J. 1, the point is made that:

"Some if not the majority of the regulations issued under most regulatory acts are interpretive. Such regulations express the views of the administrative officer or agency as to the meaning or application of general requirements of a regulatory act, the construction that will be followed in administering the act. Interpretive regulations (except where they have been 'ratified' by Congress) have validity in judicial proceedings only to the extent that they correctly construe the statute and then, strictly speaking, it is the statute and not the regulation to which the individual must conform."

The article notes that one who chooses to rely upon an interpretive regulation does so at his own peril and stands the risk of it not being followed by the courts. It notes that in some cases Congress has imposed statutory limitations remedying the harsh results which are occasioned by an administrative officer or agency changing its interpretation of a statute and then going further and applying to past events the new interpretive regulation rather than the regulation which had been in force at the time of the event. Reference is made to the Securities and Exchange Act of 1934 in which it is provided that:

"No provision of this Act imposing any liability shall apply to any act done or omitted in good faith in conformity with any rule or regulation of the [Commission] notwithstanding that such rule or regulation may, after such act or omission, be amended or rescinded or be determined by judicial or other authority to be invalid for any reason." 15 U. S. C. A. § 78w(a).

Lee states that:

"Such a provision accomplishes two results. It necessarily leaves the statutory rule unchanged and thereby protects the individual who chooses to rely on the statute rather than on the regulation. However, if the individual chooses to rely not on the statute but on the Government's own regulation * * * such a provision also protects the individual up to the time that the invalidity of the regulation is determined either by decision of the court or by amendment or rescission by the administrative officer or agency, and futher protects the individual against retroactive amendment or rescission of the regulation."

The various sections of Title 42, U. C. A. 1943 imposed liability upon the hotel company to make a contribution for the fund. This liability was created by statute. It existed even though the tribunal charged with the administration of the Act erroneously thought that Act did not apply in the case of "name bands." Such an erroneous construction could not have the effect of amending the statute or of cancelling the statutory liability of the employer. To hold otherwise would permit the administrative tribunal to, in effect, amend a statute by the adoption of erroneous interpretive regulation. Construction is not legislative and should not be given that effect.

The order of the Commission is affirmed.

McDONOUGH and WADE, JJ., concur.

LARSON, Justice (dissenting).

I dissent. I agree that the relationship betwen the Hotel Company on the one hand, and the "name bands" and "special attractions" on the other hand, were service relationships and constitute "employment" within the meaning of the Unemployment Compensation Act, and tax liability exists. This was settled by the Singer Case cited in the main opinion. I agree therefore that the Commission was correct in holding the Hotel Company liable for employment taxes thereon from the date the Commission advised the Hotel Company of the change in its ruling or policy in regard to such matters. I think that part of the order of the Commission taxing unemployment contributions against the Hotel Company on amounts paid by it to "name bands" prior to notice of the Commission's change of policy and new ruling, is in its nature retroactive taxing, beyond the power of the Commission and void.

I can see no reason why the State, and any and all of its agencies should not be held to the same standards of morality, equity, and fair dealing that it exacts from the people. I think any effort by the state or any of its agencies to set

itself beyond, or exempt itself or its acts and conduct from, such standards is beyond its constitutional power and void. The state is a political entity set up by the people for the purposes of united action to insure that all its population, personal or corporate, receive the same privileges and submit to the same obligations in their conduct and relationships with one another. Beyond this there is no reason for the existence of the state. The preamble to the Utah Constitution declares: ".We, the people of Utah, in order to secure and perpetuate the principles of free government." Art. 1, Sec. 1 grants *all* men the same inherent and inalienable rights; and Sec. 2 declares that all free governments are founded on the authority of the people "for their equal protection and benefit." Section 27, declares that "Frequent recurrences to *fundamental principles is essential* to the security of individual rights and the perpetuity of free government." The state has only those powers given it by the Constitution, *Duchesne Co.* v. *State Tax Comm.*, 104 Utah 365, 140 P. 2d 335; and we search in vain for any power given to the state to exempt itself, or its agencies from the standards of fair dealing imposed by the people upon themselves. It may be taken for granted that neither the members of the Industrial Commission nor of this court would put its approval upon action such as here involved by one individual in his dealings with another. But let us go directly to the law point discussed in the prevailing opinion.

The following questions are presented: (1) Was the agreement above referred to, made by the parties in settlement of similar disputes in 1939, and forming the basis of action from that time until these cases arose in 1942, a determination of the legal relationship between the company and the "bands" so as to fix the relationship of the company and the bands for the purpose of tax liability, and bind the commission? (2) If question (1) be answered in the negative, was the agreement and the action thereon such as to bar or estop the commission from collecting taxes on such activities engaged in prior to the time of a change in policy or ruling had been given by the commission?

The hotel company contends that the agreement was a legal determination of the meaning and application of the act, and when the company settled with the commission on that basis and dismissed its suit, that agreement became the law of the case, and the commission cannot now change its ruling to the detriment of the company. The commission on the other hand argues that the agreement was merely a compromise of then pending cases, and had no future application. No case in point is cited in the briefs and I have found none, so I am left to a determination from the agreement itself and what was done by the parties under it. That the agreement was an administrative interpretation of the act and a determination of its meaning as applied to the facts as they then existed, and as they exist in this case is clear. Under the agreement the company was not required to pay the tax on the amount paid the "name bands" in the suits then pending, and upon that settlement they were dismissed by the hotel company. A stipulation filed in this case with respect to the nature, substance and meaning of that agreement reads in part as follows:

"* * * that the further agreement was that the Company would continue to pay contributions on all members of the local Orchestras which it employed, which payment it has made; but that the Company would not be required to pay on Unit or 'Name Bands' otherwise known as 'Traveling Orchestras,' made up out of the state and brought into the state as a unit and maintained as a unit during the time they were playing for the Company in the State * * *"

In view of this agreement, the commission's contention that it was intended thereby to compromise only the pending cases, must fail—the agreement does not permit of such interpretation. That the commission may make an interpretation or determination of the meaning of the act is clear, as "it shall be the duty of the industrial commission to administer" the unemployment compensation act. Sec. 42-2a-11 (a) (1), U. C. A. 1943. Interpretation of the act is incident to its administration, since the administrator must first determine the meaning of an enactment before he can administer it, and enforce its provisions. Of course, this

interpretation is not final since it is reviewable by the courts. Sec. 42-2a-11, U. C. A. 1943. But the question here is whether, once having announced an interpretation, or a statement of policy under the act, the commission is bound by such determination until changed, either by its own action, or by pronouncement of the courts. An enactment of the legislature, or a judgment of the court, is the law until repealed, amended, reversed, or vacated. When such is done, ordinarily the change is effective as of the time it is made. It has been held that the courts will not permit a change of administrative interpretation to operate retroactively to the detriment of those relying thereon in good faith.

In fields outside of the treasury department the Federal cases hold that administrative rulings and practices cannot be retroactive, and as to past transactions, they are binding. In *United States* v. *MacDaniel*, 7 Pet. 1, 14, 8 L. Ed. 587, it was said:

"\* \* \* of necessity, usages have been established in every department of the government, which have become a kind of common law, and regulate the right and duties of those who act within their respective limits. And no change in such usages can have a retrospective effect, but must be limited to the future.

"Usages cannot alter the law, but it is evidence of the construction given to it; and must be considered binding on past transactions."

This language referred to the practice of paying additional money to a clerk in the Navy department for the performance of duties in addition to those for which he was regularly employed. There was no statutory authority either for the appointment for the additional work, or for the additional payment. The individual involved had been working for a long period of time, and received compensation. Suit was brought by the government to recover compensation paid. In *United States* v. *Alabama G. S. R. Co.*, 142 U. S. 615, 12 S. Ct. 306, 308, 35 L. Ed. 1134, the court dealt with a regulation or practice of the post office department, as follows:

"It is a settled doctrine of this court that in case of ambiguity the

judicial department will lean in favor of a construction given to a statute by the department charged with the execution of such statute, and, if such construction be acted upon for a number of years, will look with disfavor upon any sudden change, whereby parties who have contracted with the government upon the faith of such construction may be prejudiced. It is especially objectionable that a construction of a statute favorable to the individual citizen should be changed in such a manner as to become retroactive, and to require from him the repayment of moneys to which he had supposed himself entitled, and upon the expectation of which he had made his contracts with the government."

Citing *Edwards' Lesse* v. *Darby*, 25 U. S. 206, 12 Wheat. 206, 6 L. Ed. 603; *United States* v. *State Bank of North Carolina*, 31 U. S. 29, 6 Pet. 29, 8 L. Ed. 308; and other cases.

In the case last cited the court dealt with a situation similar to the one here presented. The hotel company during the three years the commission's ruling was in effect, contracted in reliance thereon. The prices to be paid to "name bands" were or may have been determined in view of the fact that their services were tax free. It is now "especially objectionable" that we permit a changed construction of the statute to be retroactive and force the hotel company to pay more for those services than was contemplated by their contracts. To the same effect on the question of retroactiveness, see *Kansas City, M. & O. R. R. Co.* v. *United States*, 53 Ct. Cl. 258, affirmed in *Northern Pac. Ry. Co.* v. *United States*, 251 U. S. 326, 40 S. Ct. 162, 64 L. Ed. 290; *United States* v. *Freeman*, 3 How. 556, 11 L. Ed. 724; 42 Am. Jur. 410.

There are some federal cases contra on the above proposition, but they all involve Treasury Department rulings and orders. In *Manhattan G. E. Co.* v. *Com'r of Int. Rev.*, 297 U. S. 129, 56 S. Ct. 397, 400, 80 L. Ed. 528, where the regulation in force at the time of the transaction in question was invalid, and the government was trying to collect taxes under a subsequent regulation, it was held that tax liability was governed by the later rule. The court however, declared that this was not giving retroactive effect to the

treasury department rule, but rather that this later rule was the first proper application of the statute. It was said:

"The statute defines the rights of the taxpayer and fixes a standard by which such rights are to be measured. The regulation constitutes only a step in the administrative process. It does not, and could not, alter the statute. It is no more retroactive in its operation than is a judicial determination construing and applying a statute to a case at hand."

This decision gives a retroactive effect to the regulation in that it allows the regulation to affect transactions completed before it came into existence. To the same effect is *Titsworth* v. *Com'r. of Int. Rev.*, 3 Cir., 73 F. 2d 385, 387, where it was said that it is the statute and not the regulation that imposes the tax liability, and so:

"Whether Regulation 74 was defective in not providing a proper method of spreading the basis of cost or not clear in defining the scope of its application, we see no sound reason why the error should not be corrected."

*Helvering* v. *R. J. Reynolds Tobacco Co.*, 306 U. S. 110, 59 S. Ct. 423, 83 L. Ed. 536, recognized the power of the Treasury Department to make its rules and regulations retroactive in effect. However, these cases are of little weight in this case, since there is a very material difference in the statutory authority given to the treasury department, and that given to the Industrial Commission. Tit. 26, U. S. C. A. Int. Rev. Code, § 3791(b) 53 Stat. 467 reads:

"Retroactivity of regulations or rulings. The Secretary, or the Commissioner with the approval of the Secretary, may prescribe the extent, if any, to which any ruling, regulation, or Treasury Decision, relating to the internal revenue laws, shall be applied *without retroactive effect.*" (Italics added.)

As the federal cases hold, this can mean only that if nothing is said about the question, the regulation or ruling is retroactive. Even under this statutory provision, the Supreme Court has held some regulations to have prospective effect only, illustrating the extreme reluctance of

courts to give retroactive effect to such administrative acts. As in *Rasquin* v. *Humphreys*, 308 U. S. 54, 56, 60 S. Ct. 60, 62, 84 L. Ed. 77, where it was said:

"Whatever validity the amended regulation of 1936 may have in its prospective operation, we think it is so plainly in conflict with the statute as to preclude its application retroactively so as to subject to tax such transfer as was made by the creation of the trust in 1934."

And in *Shearer* v. *Anderson*, 2 Cir., 16 F. 2d 995, 996, 51 A. L. R. 534:

"Whatever the effect of the departmental interpretation of the later act of 1918 may be on the construction of the same clause re-enacted by still later legislation, it cannot operate retroactively; we are here concerned with rights under the act of 1916. The later views of the department as to the meaning of this act can be at the best but persuasive."

The only way in which these conflicting opinions can be reconciled is that in instances where it appears that to give a retroactive effect will impose undue hardship on the taxpayer, the court will refuse to do so, even though the department said nothing in its order to the effect that it should have prospective effect only.

Let us contrast the provisions of our statute with those governing the treasury department. Sec. 42-2a-11 provides:

"(a) (1) It shall be the duty of the industrial commission to administer this act; and it shall have power and authority to adopt, amend, or rescind such general rules, regulations, and special orders * * * and take such other action as it deems necessary or suitable to that end. * * *

"(b) General rules and special orders may be adopted, amended, or rescinded by the commission only after public hearing or opportunity to be heard thereon, of which appropriate notice has been given. Regulations of the commission may be adopted, amended, or rescinded and shall become effective in such manner as the commission shall prescribe. General rules shall become effective ten days after filing with the secretary of state and such publication in one or more newspapers of general circulation in this state as the commission shall prescribe. Special orders shall become effective ten

days after notification to or mailing to the last-known address of the individuals or concerns affected thereby."

Not only do the above statutory provisions not specifically authorize the commission to make its orders retroactive, but I believe that the implications are that orders should not be retroactive. It is well recognized that unless the mandate of the statute is plain and compels that construction, it will not be construed to be retroactive. *United States* v. *Moore*, 95 U. S. 760, 24 L. Ed. 588; *Brewster* v. *Gage*, 280 U. S. 327, 50 S. Ct. 115, 74 L. Ed. 457; *Miller* v. *United States*, 294 U. S. 435, 55 S. Ct. 440, 79 L. Ed. 977; *United States* v. *Magnolia Petroleum Co.*, 276 U. S. 160, 48 S. Ct. 236, 72 L. Ed. 509. From this rule it follows that unless the statute plainly and clearly gives power to an administrative body to make retroactive orders and rules, it will not be so construed. Our statute does not compel such an interpretation, and I should not so interpret it.

There is yet another reason why the order of the Commission should not be retroactive. The original interpretation or ruling was made in 1939, interpreting Sec. 42-2a-19 (j) (5) to exclude "name bands" from the operation of the act. In 1941, Laws 1941, c. 40, the legislature re-enacted the entire Unemployment Compensation Act as it now appears in U. C. A. 1943, and made no change in the provisions of the section interpreted by the commission's order. It is well recognized that re-enactment without change, when there is an administrative interpretation of the statute is a legislative approval of that interpretation or ruling. *Johnson* v. *Manhattan R. Co.*, 289 U. S. 479, 53 S. Ct. 721, 77 L. Ed. 1331; *United States* v. *Dakota-Montana Oil Co.*, 288 U. S. 459, 53 S. Ct. 435, 77 L. Ed. 893; *Massachusetts Mut. Life Ins. Co.* v. *United States*, 288 U. S. 269, 53 S. Ct. 337, 77 L. Ed. 739. In *Helvering* v. *R. J. Reynolds Tobacco Co.*, supra [306 U. S. 110, 59 S. Ct. 427, 83 L. Ed. 536], the court dealt with such a situation, saying:

"* * * we are of opinion that the re-enactment of the section,

without more, does not amount to sanction of retroactive enforcement of the amendment, in the teeth of the former regulation which received Congressional approval, by the passage of successive Revenue Acts including that of 1928 [26 U. S. C. A. Int. Rev. Acts, page 351 et seq.]"

In that case, there was an interpretation of the act, then re-enactment of the legislation, subsequently a different interpretation, and then another re-enactment. The court held that merely because of the last re-enactment, Congress did not intend that the later interpretation should be retroactive, in view of the former interpretation which had also been approved by re-enactment. By re-enactment without change, the Utah legislature approved the Commission's interpretation of Sec. 42-2a-19 (j) (5). However, by also re-enacting Sec. 42-2a-11 (a) (1) the legislature sanctioned a future change in this construction. Since the Commission is subject to the legislative authority, and has only the power given by the legislature, its future change may not be retroactive in the teeth of a construction which has received a legislative sanction and approval. The Commission was in error in making its order retroactive to 1940. Under the facts here presented the Commission should be bound by its interpretation of the act until such time as that ruling, practice, or interpretation was modified, and such modification was effective as of the time it was published and/or communicated to plaintiff.

MOFFAT, Justice, deceased.