## SALT LAKE COUNTY v. KENNECOTT COPPER CORPORATION.

## SUMMIT COUNTY et al. v. SILVER KING COALITION MINES CO.

## SAME v. PARK UTAH CONSOL. MINES CO.

## WASATCH COUNTY et al. v. SAME.

## SAME v. NEW PARK MINING CO.

### Nos. 3230–3234.

Circuit Court of Appeals, Tenth Circuit.

April 14, 1947.

Rehearing Denied Oct. 6, 1947.

Harry D. Pugsley, Spe. Asst. Atty. Gen. of Utah (Grover A. Giles, Atty. Gen. of Utah. Zar E. Hayes, Asst. Atty. Gen., Harold E. Wallace and J. P. Neeley, Asst. Salt Lake Co. Attys., both of Salt Lake City, Utah, P. H. Neeley, Summit Co. Atty., of Coalville, Utah, and L. C. Montgomery, Wasatch Co. Atty., of Heber, Utah, on the brief), for appellants.

J. M. Christensen and C. C. Parsons, both of Salt Lake City, Utah (Wm. M. McCrea and A. D. Moffat, both of Salt Lake City, Utah, on the brief for Kennecott Copper Corporation; R. J. Hogan, of Salt Lake City, Utah, on the brief for Silver King Coalition Mines Company; James Ingebretsen, William W. Ray, and Athol Raw-

lins, all of Salt Lake City, Utah, on the brief for Park Utah Consolidated Mines Co.; and H. G. Metos, of Salt Lake City, Utah, on the brief for New Park Mining Co.), for appellees.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

BRATTON, Circuit Judge.

The questions presented in these cases relate to the validity of certain taxes imposed by the State of Utah against the properties of four mining companies in that state.

Section 2, Article XIII, of the Constitution of Utah provides that all tangible property in the state, not exempt under the laws of the United States, or under the constitution of the state, shall be taxed in proportion to its value, to be ascertained as provided by law; section 3 provides for uniformity and equality in rate of assessment and taxation; section 4 provides that all metalliferous mines or mining claims shall be assessed in such manner as the legislature shall provide; and section 11 creates a state tax commission and provides that it shall assess mines, have such other powers of original assessment as the legislature may provide, and supervise and administer the tax laws of the state. Section 80—5—1, Utah Code Ann. 1943, provides that all tangible property must be assessed at its full cash value, and that land and the improvements thereon must be assessed separately; section 80—5—46 provides that it shall be the duty of the state tax commission to assess annually all real, personal, and mixed property which the commission is by the constitution and laws of the state required to assess; section 80—5—56 provides that all metalliferous mines and mining claims, both placer and rock in place, shall be assessed at five dollars per acre and in addition thereto at a value equal to twice the net annual proceeds thereof for the calendar year next preceding, and that all machinery used in mining and all property or surface improvements upon or appurtenant to mines or mining claims and the value of any surface use made of mining claims or mining property for other than mining purposes shall be assessed at full value; and with certain deductions which do not have ma-

terial bearing here, section 80—5—57 provides that the words "net annual proceeds" of a metalliferous mine or mining claim are defined to be the gross proceeds realized during the preceding calendar year from the sale or conversion into money or its equivalent of all ores from such mine or mining claim extracted by the owner, contractor, or other person working upon or operating the property, including all dumps and tailings.

Pursuant to an Act of Congress, 50 U.S.C. A.Appendix § 901 et seq., and by administrative action, the Administrator, Office of Price Administration, placed ceiling prices upon copper, lead, and zinc, of 12, $6\frac{1}{2}$, and $8\frac{1}{4}$ cents per pound, respectively; and also pursuant to an Act of Congress, 50 U.S.C.A. Appendix, § 902, and by administrative action, Metals Reserve Company, a wholly owned agency of the United States, was authorized to make premium or subsidy payments at the rate of 5 cents per pound for copper, $2\frac{3}{4}$ cents per pound for lead, and $2\frac{3}{4}$ cents per pound for zinc, for all such minerals produced in excess of fixed quotas.

During the year 1943, Kennecott Copper Corporation, Silver King Coalition Mines Company, Park Utah Consolidated Mines Company, and New Park Mining Company severally owned mines and mining claims in Utah from which they produced copper, lead, and zinc in excess of their respective quotas. All of the companies except Kennecott Copper Corporation sold their entire excess production. Kennecott Copper Corporation sold part of its excess production and retained part. The unsold part was appraised. But for presently material purposes the entire excess production of that company may be treated as having been sold. Metals Reserve Company made premium or subsidy payments to the companies, computed on the basis of 5 cents per pound for copper, $2\frac{3}{4}$ cents per pound for lead, and $2\frac{3}{4}$ cents per pound for zinc, produced and sold in excess of the quotas. In assessing the mines and mining claims of the companies for the year 1944, the state tax commission added to twice the sum received by each company from the sale of its ores in 1943 the amount of the premium or subsidy payments made to that company and levied a tax against the company according-

ly. The companies protested and seasonably applied to the commission for the abatement of the part of the tax attributable to the inclusion of the premium or subsidy payments in the tax base. In addition, the commission assessed certain lands owned by Kennecott Copper Corporation, and these assessments were also protested. The several protests were denied; the taxes were paid under protest; separate suits were instituted in the United States Court for Utah to recover the taxes in controversy; the cases were consolidated for trial before a jury; plaintiffs severally filed identical motions for directed verdicts; the motions were sustained and directed verdicts returned; separate judgments were entered; defendants perfected separate appeals; and the causes were consolidated for submission in this court.

 One ground of the motions for directed verdicts for plaintiffs was that in the taxation of the mines and mining claims, the inclusion of subsidy payments in the gross proceeds and thence in the net proceeds, as a basis for such taxation, was not authorized by the law of Utah. That question consumes much space in the briefs and it was ably presented on oral argument. The Supreme Court of Utah quite recently considered the question and held without qualification that in the taxation of mines and mining claims in that state, premium or subsidy payments of this kind should be added to twice the amount of the proceeds received from the sale of the ores for the preceding calendar year as the base for such taxation. United States Smelting, Refining & Mining Co. v. Haynes, Utah, 176 P.2d 622. And at the same time, the court reached a like conclusion in a case involving a closely similar question. Combined Metals Reduction Co. v. State Tax Commission, Utah, 176 P.2d 614. The question before us is essentially one of local law and therefore these decisions of the supreme court of the state are controlling.

 Another ground of the several motions for directed verdicts was that the inclusion of subsidy payments in the gross proceeds and thence in the net proceeds as a basis for taxation of the mines and mining claims constituted taxation of the means used by the United States in the prosecution of the war and amounted to a direct levy upon the activities and facilities employed by the United States in that behalf and therefore was beyond the power of the state, or its taxing unit. Although somtimes difficult to define, the distinction between taxation of private interests and and taxation of governmental interests is fundamental in application of the doctrine of immunity of one sovereign and its instrumentalities from taxation by the other. And under our dual system of government, application of the principle which denies validity of a tax by one sovereign against another has required from time to time the observing of close distinctions in order to maintain untrammeled freedom of one sovereign in the discharge of its appropriate functions without undue limitation upon the taxing power of the other which is equally essential to government, both national and state. Taxes imposed by state law may not be laid directly upon the property or activities of the federal government itself, or of any of its instrumentalities, but private property and interests may be subjected to taxation under state law even though they bear a close relation to the activities of the United States. The taxes involved in these cases were ad valorem taxes laid against the companies and their properties located in Utah. The premium or subsidy payments were taken into consideration only as an element in the yardstick for measuring the value of the properties for purposes of ad valorem taxation. The inclusion of the premium or subsidy payments in the fixing of the tax base did not amount to a tax against the United States, its instrumentality, its activities, or its property; and it did not contravene any constitutional implication forbidding a tax under state law against the United States or its interests. James v. Dravo Contracting Co., 302 U.S. 134, 50 S.Ct. 208, 82 L.Ed. 155, 114 A.L.R. 318; Alabama v. King & Boozer, 314 U.S. 1, 62 S.Ct. 43, 86 L.Ed. 3, 140 A.L.R. 615; Smith v. Davis, 323 U.S. 111, 65 S.Ct. 157, 89 L.Ed. 107.

■■ The motion of Kennecott Copper Corporation for a directed verdict in its favor contained two further grounds. One was that the land on which the tailings dump of the company was located was not assessed as provided by law, and that the assessment as to that land was contrary to the law and void. The other was that the land contiguous to the mills and mill facilities and occupied by the recreational grounds and golf course of the company was not assessed as provided by law, and that the assessment as to that land was likewise contrary to law and void. The tract on which the tailings dump is located consists of 6,258.93 acres. It approximates ten square miles in area and is several miles distant from the mines. For approximately thirty-seven years prior to the year in question, tailings from the open-pit mining operations of the company have been dumped on it. The dump has an average depth of 31 feet and it contains approximately 419,-000,000 tons of tailings. The tailings contain about one-tenth of one per cent of copper, and they are worthless except for a relatively small amount of copper recovered from the drainage from the dump.

The company owns 21,123 acres of land at and in the vicinity of its mills and reduction works. About 982.42 acres of such land are occupied by the mills and mill facilities, and about 182.83 acres are used for a recreational park and golf course of the company, devoted to recreational activities of its employees. The balance of the land is held for and devoted exclusively to the mining operations of the company. The state tax commission assessed the 6,-258.93 acres, the 982.42 acres, and the 182.83 acres at $45.73 per acre. The point of difference bringing the parties to grips in respect to these assessments is whether these lands must be assessed under that part of section 85—5—56, supra, which provides in substance that all metalliferous mines and mining claims shall be assessed at five dollars per acre and in addition thereto at a value equal to twice the net annual proceeds thereof for the calendar year next preceding, or under the subsequent language contained in the section which provides in effect that all property or surface improvements upon or appurtenant to mines and mining claims and the value of any surface use made of mines or mining property for other than mining purposes shall be assessed at full value. The trial court apparently entertained the view that these lands were subject to tax only under the first provision in the statute, at a value of five dollars per acre. While the statute provides in substance in the first part thereof that the land constituting a mine or mining claim shall be valued at five dollars per acre as a basis for taxation, it does not provide the quantity of land to be considered as part of the mine or mining claim; it fails to provide how land situated several miles distant from the mine or mining claim and used as a tailings dump shall be valued, whether at five dollars per acre or otherwise; it fails to provide how land adjacent to the mill and mill facilities and used in connection with the mining operations shall be assessed, whether at five dollars per acre or otherwise; and in like manner, it fails to provide how land adjacent to the mine or mining claim or to the mill and mill facilities but used as a recreational ground and golf course shall be assessed, whether at five dollars per acre or otherwise. It fails to speak specifically with respect to land used as a tailings dump several miles distant from the mine or mining claim. Similarly, it fails to speak in specific terms with respect to land located adjacent to the mill and mill facilities but used as recreational grounds and golf course. In presently material part, the subsequent provision in the statute commands in effect that all other property upon or appurtenant to a mine or mining claim shall be assessed at full value. Thus the section as a whole fails to speak specifically with respect to land used as a tailings dump several miles distant from the mine or mining claim, and it fails to speak in specific language with respect to land located adjacent to the mill and mill facilities but used as a golf course or other recreational purposes. Insofar as providing in specific terms the value at which lands located and used as these lands were located and used shall be assessed, the statute is completely silent. It does not provide in spelled-out language the value to be placed

upon lands thus located and used. It fails to blueprint the course to be followed in its application to lands thus located and used. There is doubt and ambiguity in the statute when applied to lands thus located and devoted to these respective uses and purposes. But for twenty-four years prior to the year in question these lands were consistently assessed in the same manner and at substantially the same amount as they were assessed here. There was no change or substantial difference in the making of these assessments, either as to procedure or valuation. The assessment in that manner over that period of time amounted to an administrative interpretation of the statute in its application to lands thus situated and used. The interpretation was that such lands should be assessed at full value rather than at five dollars per acre without reference to actual value. And during that long period of time the legislature of the state convened biennially, amended in numerous respect the statutes relating to taxation, amended section 80—5—56 at least once (see chapter 101 Laws of 1937), and did not express or indicate in any manner its disapproval of the administrative interpretation placed upon the statute. Both the Supreme Court of Utah and this court are firmly committed to the familiar principle of law that in the interpretation of a doubtful or ambiguous statute, the long-continued and uniform interpretation of the administrative agency or authority charged with its administration is entitled to great weight and will not be overturned, except for cogent reasons. An administrative interpretation does not avail to overcome a statute which is so plain in its commands that it leaves nothing for construction; but ordinarily in case of doubt or ambiguity, it is entitled to great weight and will not be overthrown, except for cogent reasons. State Board of Land Commissioners v. Ririe, 56 Utah 213, 190 P. 59; Utah Hotel Co. v. Industrial Commission, 107 Utah 24, 151 P.2d 467, 153 A.L.R. 1176;

Utah Power & Light Co. v. Public Service Commission, 107 Utah 155, 152 P.2d 542; E. C. Olsen Co. v. State Tax Commission, Utah, 168 P.2d 324; Baze v. Scott, 10 Cir., 106 F.2d 365; United States v. Magnolia Petroleum Co., 10 Cir., 110 F.2d 212; Standard Surety & Casualty Co. v. State of Oklahoma, 10 Cir., 145 F.2d 605. In State Board of Land Commissioners v. Ririe, supra [56 Utah 213, 190 P. 62], the court said:

"The Legislature is presumed to know the construction placed upon the language of the act by both the Land Board and the State Auditor. Notwithstanding that fact, the Legislature has met biennially, and there have been three revisions or compilations of the statutes since the original enactment. Furthermore, the particular section has been amended by the Legislature in 1911, 1915, and 1919. At no time, apparently, has the Legislature been dissatisfied with the interpretation of the Land Board and the State Auditor, but has given its affirmative approval by the re-enactment of the section with full knowledge of the interpretation placed upon it. While it is true that the construction of a statute by the executive department is not binding upon the courts, it is, nevertheless, also true, and is so determined by the overwhelming weight of authority, that unless such construction does violence to the apparent intent of the language used it is entitled to serious consideration by the courts, and especially so if the statute has been in force, for any great length of time and has been so construed."

Considering the statute as a whole, and giving due weight to the long-continued and uniform administrative interpretation placed upon it, we find ourselves unable to share the view that the assessment of the three tracts of land was void.

The judgments are severally reversed and the causes remanded with directions to enter judgments for the defendants.