COLUMBIA IRON MIN. CO. v. IRON COUNTY, et al.

No. 7503. Decided April 19, 1951. (230 P. 2d 324.)

, See 61 C. J. S., Taxation, Sec. 833. Affiliated corporations, income tax evasions by. 27 Am. Jur., Income Taxes, Sec. 248; 130 A. L. R. 1217.

*Calvin Behle, A. D. Moffat, Dickson, Ellis, Parsons & McCrea,* Salt Lake City, for appellant.

*Durham Morris,* Cedar City, *H. L. Mulliner,* Salt Lake City, for respondent.

*Robert H. Ruggeri, Don J. Hanson,* Salt Lake City, for Utah State Tax Commission, intervener and respondent.

McDONOUGH, Justice.

Plaintiff filed its report on net proceeds of iron ore mines for three years prior to 1948. The State Tax Commission, in making its assessment, increased the values. Plaintiff then paid to Iron County the entire amount of the tax based on the assessment as adjusted by the valuations made by the commission, but plaintiff paid under protest the portion of the tax which it claimed to be excessive. It then filed this suit to recover the amount paid which represents an alleged over-assessment. The State Tax Commission was permitted to intervene and to defend the action with Iron County. From an adverse judgment, plaintiff appeals.

We can narrow this case to one principal question: Prior to the 1949 amendment of Sec. 80—5—57, U. C. A. 1943, if a mining company and the chief purchaser of its ores were both wholly owned subsidiaries of a parent corporation, was the price of ore agreed upon between the two subsidiaries and the costs and expenses charged between subsidiaries, conclusive as to the amount of the gross proceeds and the deductions authorized by statute? This case involves the · construction of the tax statutes relating to metalliferous mines as they existed prior to 1949.

Sec. 80—5—56, U. C. A. 1943, as amended prior to 1949 provides that:

"All metalliferous mines and mining claims, both placer and rock in place, shall be assessed at $5 per acre and in addition thereto at a value equal to two times the average net annual proceeds thereof for the three calendar years next preceding. * * *"

Sec. 80—5—57, as it was worded prior to the 1949 amendment, provided, inter alia:

· "The words, 'net annual proceeds,' of a metalliferous mine or mining claim are defined to be the gross proceeds realized during the preceding calendar year from the sale or conversion into money or its equivalent of all ores from such mine or mining claim extracted by the owner or lessee, contractor or other person working upon or operating the property, including all dumps and tailings, during or previous to the year for which the assessment is made * * *."

By the amendment, Laws 1949, chap. 79, the following was added to the foregoing portion of the statute:

"Provided, that in cases where the ores are sold under a contract existing between a parent and a subsidiary company or between companies which are wholly or partially owned by a common parent or between companies otherwise affiliated and the gross proceeds realized from the ore is disproportionate to its reasonable fair cash value, the tax commission shall place a value on the ore which is equal to its reasonable fair cash value, and said amount shall be taken as the basis for the tax. * * *"

The statute also provides for certain deductions in computing net proceeds. Those provisions were substantially the same prior to the 1949 amendment.

The assessment in controversy in this case was for the year 1948, after the Geneva Steel Plant was purchased by the United States Steel Corporation and transferred to Geneva Steel Company, a wholly owned subsidiary of said United States Steel Corporation. The assessment was based on the average net annual proceeds of the years 1945, 1946 and 1947. Plaintiff mining company is likewise a wholly owned subsidiary of said steel corporation. Plaintiff claimed that it had a bona fide contract with the Defense Plant Corporation, a governmental agency, which was transferred by the United States of America to Geneva Steel Company in 1946, and that the sales of ore to Geneva Steel Company have been made pursuant to such contract.

The respondents on the other hand contend that many of the contract provisions which constituted part of the consideration for the price of the ore to be paid by the government, were eliminated when the buyer's end of the contract was assigned to Geneva Steel Company, and the costs of machinery and equipment allocated to plaintiff and the costs of production were subject to the control of the United States Steel Corporation, so that the original contract ceased to exist.

In order to understand the contractual provisions relied on by plaintiff, it is necessary to recite some of the facts showing how these operations originated. On August 17, 1943, the plaintiff, a wholly owned subsidiary of United States Steel Corporation, entered into agreement with the Defense Plant Corporation to mine and furnish a certain tonnage of iron ore to the Ironton Plant No. 2, and also to the Geneva Steel Plant, both plants then being owned by the governmental agency. The contract is lengthy and provides for various types of performance and also compensation for performance on the part of plaintiff. By the terms of said contract plaintiff was granted the use of machinery and equipment of Defense Plant Corporation at 4 cents per ton of ore produced, and plaintiff was guaranteed payment of various expenses of operation including certain taxes, insurance premiums, attorney fees, and other items not embraced within the deductions provided in Sec. 80—5—57 for determining net proceeds. By paragraph Ten of said agreement, plaintiff was guaranteed payment of the "total production costs per net ton of iron ore mined and delivered f. o. b. railroad cars," including funds used for development and stripping operations in proportion to the estimated recoverable ore, and also a charge for depletion, of 22 cents per gross ton of ore sold to Defense Plant Corporation until cessation of hostilities with Germany, Italy and Japan, and 25 cents per gross ton thereafter.

On the same date as the aforesaid contract was executed, the Defense Plant Corporation entered into an operating agreement with Geneva Steel Company, another wholly owned subsidiary of the United States Steel Corporation. Both contracts were entered into in furtherance of the war effort.

On June 18, 1946, the Reconstruction Finance Corporation, as successor in title to properties of Defense Plant Corporation, accepted the bid of United States Steel Corporation to purchase the Geneva Steel Plant in the name of one of its subsidiaries, and Geneva Steel Company was nominated to take title. The machinery and equipment of Defense Plant Corporation used by plaintiff was also purchased and transferred to plaintiff corporation; but the Geneva Steel Plant and the contract here in controversy were transferred to Geneva Steel Company as part of the assets involved in the sale. After such transfer of title, a value was allocated for the machinery and equipment taken over by plaintiff subsidiary, and the contract for the purchase of ore was abrogated except for paragraph Ten, It is in connection with the alleged retention of paragraph Ten that plaintiff predicates its claim that there was a bona fide sale of ore under an enforceable contract antedating acquisition of title to Geneva Steel Plant by Geneva Steel Company.

It is conceded that the sale of iron ore to parties other than to other subsidiaries of United States Steel Corporation was at a price higher than the price computed under the recited provisions of paragraph Ten. However, plaintiff points out that these other sales were small both as to total volume of sales and quantities involved in each sale. Plaintiff contends that under the statute as it existed prior to the 1949 amendment, the actual sale price of the ore was controlling, and further, that the original contract of 1943 was a bona fide contract and the fact that a subsidiary of United States Steel Corporation succeeded to the rights

of Defense Plant Corporation, could not operate to abrogate such contract.

The defendant and intervener contend, on the other hand, that by deleting all of the provisions of the 1943 contract except paragraph Ten, the contract was either abrogated in effect or it was so altered that the basis on which ores were sold to the governmental agency was destroyed. They point out that other provisions in the contract of 1943, which were canceled, constituted a substantial part of the consideration for the sale price of the ore, and that by such cancellation and the acquisition of the buyer's end of the contract by Geneva Steel Company as a subsidiary of the United States Steel Corporation, both the seller and buyer were controlled by the same officials, and the factors which made up the costs and expenses were likewise determined by the parent corporation.

It was stipulated by and between the parties that between 1937 and 1942, plaintiff delivered ores to Columbia Steel Company at Ironton, Utah, another subsidiary of United States Steel Corporation, and plaintiff reported to the State Tax Commission the sale price of the ores as the basis for the mine tax, and in each of those years the tax commission determined the net proceeds and value of the mine by fixing the value per ton of such ore in an amount in excess of the price per ton so reported by plaintiff as its sale price as between the two subsidiary companies. During the period of 1943 to 1946, the tax commission accepted as the basis for the net proceeds mine tax computation the contract sales price for those years as paid by the Defense Plant Corporation while it owned and controlled the operation of the Geneva Steel Plant. During 1947 and thereafter, plaintiff sold some ore to non-affiliated buyers at prices higher than charges made to Geneva, although it is admitted that these small quantity sales required special handling. It was further stipulated that if the State Tax Commission is permitted to make an assess-

ment for tax purposes on a value higher than the actual purchase price paid by Geneva in 1947 and 1948, the plaintiff admits for the purpose of this case that the computation is correct.

Thus, there is presented only a question of law applicable to the facts of this case. It is not disputed that since 1949 the State Tax Commission has authority to do what was done in this case, in view of the express language inserted in the statute by amendment. The plaintiff argues that there would have been no occasion for the 1949 amendment if the State Tax Commission had authority to do what it did do with respect to the 1947 assessment. Defendant and intervener argue that the amendment was a clarifying amendment and did not alter the legislative intent.

In his written memorandum decision, the trial judge stated:

"That the sale price received by the plaintiff, a wholly owned subsidiary of the United States Steel Corporation, for ores sold by plaintiff to another wholly owned subsidiary of said corporation, does not, for the purpose of fixing the assessed value of plaintiff's mining claims and lands, constitute the 'gross proceeds realized from the sale or conversion into money or its equivalent' of such ores."

The trial court was also of opinion that in enacting secs. 80—5—56 and 57, U. C. A. 1943,

"it was not the intention of the Legislature to thereby allow the value of mining claims to be fixed for tax purposes by the contract price of ores sold by one subsidiary to another subsidiary of the same ultimate owner or parent corporation. The court believes that the Legislature intended that the proceeds received by the ultimate owner should be considered rather than a contract price fixed in a contract between subsidiaries or agencies of the ultimate owner."

We adopt the quoted portions of the opinion of the trial judge as a correct interpretation of the statute, sec. 80—5—57, U. C. A. 1943. It is often to the advantage of corporations engaged in business through various subsidiaries, to determine prices between subsidiaries on a basis other than actual market or fair value conditions. Consequently, the

Legislature used not only the term "gross proceeds realized from the sale or conversion into money," but also added "or its equivalent." In *U. S. Smelting, Refining & Mining Co. v. Haynes*, 111 Utah 172, 176 P. 2d 622, 624, we held that the term "gross proceeds realized * * * from the sale or conversion into money or its equivalent" means the total amount of money or other things of value which the owner may receive or take possession of at pleasure. Under the original contract, there were other things of value realized by plaintiff from the ores sold to the government agency, and had the plaintiff received nothing above the cost of extraction of the ores as the sale price and had it elected to obtain other benefits under the contract, it could not be argued that there were no net proceeds simply because plaintiff had elected to obtain consideration in some other form or manner.

In this case, the ultimate owner of the ore was and is the parent corporation. As between subsidiaries, the ore selling subsidiary and the ore buying subsidiary, the operations are controlled by the parent corporation, and the United States Steel Corporation as such parent corporation is the ultimate owner. It was not the intent of the Legislature to permit a corporation which operates in this state through wholly owned subsidiaries, to allow one subsidiary to sell to another subsidiary at a price which is below fair market value, and thereby avoid payment of the fair amount of taxes. In such cases, the ultimate owner is the parent corporation, and the State Tax Commission is not required to adopt the intercompany sales as the basis for the assessment. As clearly pointed out in *Salt Lake County v. Kennecott Copper Corp.*, 10 Cir., 163 F. 2d 484, 485, 486:

"Section 2, Article XIII, of the Constitution of Utah provides that all tangible property in the state, not exempt under the laws of the United States, or under the constitution of the state, shall be taxed in proportion to its value, to be ascertained as provided by law; section 3 provides for uniformity and equality in rate of assessment and taxation; section 4 provides that all metalliferous mines or mining claims shall be assessed in

such manner as the legislature shall provide; and section 11 creates a state tax commission and provides *that it shall assess mines,* and have such other powers of original assessment as the legislature may provide, and supervise and administer the tax laws of the state."

In *Salt Lake County* v. *Utah Copper Co.,* 10 Cir., 93 F. 2d 127, it was contended that there should be included in the assessment made by the tax commission, not only the ore actually produced during the year, but also the ore sold which had been produced in a previous year. It was necessary for the court to construe the phrase "gross proceeds realized during the preceding calendar year from the sale or conversion into money or its equivalent of all ores from such mine or mining claim extracted by the owner" [93 F. 2d 128, 129, note 1]; and the court held that such phrase related to the amount of ore produced. The court made the following statement which is in harmony with our views: "Counsel for appellant urge that the net annual proceeds should be arrived at by ascertaining the amount received from sales made during the year preceding the assessment year, regardless of when the ore was produced, and deducting therefrom the costs for such preceding year. Such a construction would leave meaningless and useless the phrase 'or conversion into money, or its equivalent,' which manifestly means something more than a mere sale." [93 F. 2d 131]

It is urged also in this case that there was no occasion for the 1949 amendment if the State Tax Commission already had authority to do what was done in this case. The amendment was a matter of clarification. Even if the tax commission construed the statute as it existed prior to the amendment to allow it to proceed only in the manner urged by appellant here, it would be immaterial. The mere fact that the commission might have been unaware of the full extent of its authority to assess according to actual values, would not deprive it of the right to do subsequently what the statute authorizes it to do. The tax commission has not

only the duty under the statute to assess mines and mining claims, but it has the constitutional mandate to do so.

The judgment of the district court is affirmed, with costs to respondents.

WOLFE, C. J., and WADE, LATIMER and CROCKETT, JJ., concur.