**CREEDON, Housing Expediter, v. STRATTON et al.**

Civil Action No. 187.

District Court, D. Nebraska, Hastings Division.

Oct. 6, 1947.

See also 7 F.R.D. 546.

Irving N. Gruber, of Washington, D. C., and Patrick J. O'Connor, of Chicago, Ill., for plaintiff.

Charles .E. Bruckman (Bruckman & Dunmire) of Hastings, Neb., for defendant, Edwin L. Stratton.

DELEHANT, District Judge.

Trial of this action on its merits as between the plaintiff and the defendant, Stratton, was had at Hastings on July 24, 1947. The defendant, City of Hastings and Goodreault, were made parties only to fortify, practically, one phase of the injunctive order which the complaint sought; and they made no appearance in the action, but defaulted and did not participate as parties in the trial. The last briefs of counsel reached the court on September 3, 1947, while the writer was absent from the district for a brief period. The case, therefore, is ready for final judgment.

The date—even the hour—of the institution of the suit is interesting. It was filed with the court in Lincoln on June 30, 1947, at 3:50 o'clock p.m., just a few hours before the operative termination of the Emergency Price Control Act of 1942, as amended, Title 50 U.S.C.A.Appendix, § 901 et seq., and the regulations issued thereunder, and almost immediately after the passage and approval, but approximately a half day before the initial effectiveness, of the Housing and Rent Act of 1947, 50 U.S.C.A. Appendix, § 1881 et seq., United States Code Congressional Service p. 200 et seq.; and similarly after the promulgation of Rent Regulations under the Housing and Rent Act of 1947 (12 F.R. 4331) but before they became effective. The original pleadings were promptly taken to Hastings, some one hundred four miles distant from Lincoln, and lodged at 7:28 o'clock p.m. on the day of their filing, with the resident deputy clerk who had returned to her office after its regular closing hour by prearrangement to receive the filings.

Injunctive relief only is sought by the plaintiff. He does not pray for the recovery of a judgment for money.

The complaint first filed rested upon both of the two Congressional acts already cited and their implementing regulations. Its resort to the earlier of those acts was for immediately current relief; to the present one for imminently prospective protection.

It alleged the defendant Stratton's ownership[1] and management of two neighboring, but separate, apartment buildings located at 905–909 West fifth street in Hastings, Nebraska, which is within a controlled Defense Rental area (see 12 F.R. 4342); his engagement or imminent engagement in unspecified violations of the earlier of the two acts; in considerable detail, the inclusion of electric and water service among the services compensated for by the maximum rents,[2] and the threatened severance and termination of such services under orders theretofore given by Stratton; and

---

[1] In this respect it was mistaken as was also the amended complaint filed later. Stratton managed, and now manages, the premises but the owner of record, and in reality was, and is, his son, Robert L. Stratton. Vide infra. But no issue has arisen upon the point. In any event, managers are subject to suit in such situations. See Section 206 (a) (b) Housing and Rent Act of 1947, supra, and definition of "Landlord" in Section 1 of Controlled Housing Regulation, supra.

[2] The evidence indicates that this statement was true in respect of water and partly true in respect of electricity which the landlord was required to furnish to the halls and spaces used in common by all tenants.

his already accomplished termination of janitorial service and garbage collection, which were also services within the contemplation of the rental structure.

Upon the basis of a showing made with the complaint, and in view of the peculiar urgency in time of the case, the court granted a restraining order without notice. That order, has been continued in force as a preliminary injunction during the brief pendency of the action and with a view to its early trial, under successive stipulations in open court by counsel. In passing, the court observes—and has directed the attention of counsel in open court to—certain manifest errors in craftsmanship in the preparation of, as well as dubiously included items of substance in, that order. They have occasioned no practical question, however, and will not receive further attention.

On July 9, 1947, the plaintiff, with leave, filed an amended complaint in which he rested his case for further relief upon alleged violations of Section 206(a) of the Housing and Rent Act of 1947.[3] That pleading reaverred the specific charges already noted, and also alleged Stratton's failure to provide "storage space, refrigerator service, heat when needed, and other services and equipment".

By answer, Stratton alleged that the Housing and Rent Act of 1947, and particularly Section 205[4] is unconstitutional; that the court is without jurisdiction, for want of sufficient allegations in the complaint; and that the actions of the owner and manager of the premises in seeking to recover possession of them were a bona fide step in the proposed alteration and remodeling thereof; and denied all allegations of the complaint.[5]

The constitutional point was not particularized and has been abandoned in the briefs. In any event, it is without validity in the face of many decisions touching national legislation of a regulatory character during the recent and partially persisting emergency. Bowles v. Willingham, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892; Fleming v. Mohawk Wrecking & Lumber Co., 331 U.S. 111, 784, 67 S.Ct. 1129; Porter v. Granite State Packing Co., 1 Cir., 155 F.2d 786; Bowles v. Ormesher Bros., D.C.Neb., 65 F.Supp. 791, and cases therein cited; as also during, and following, the comparable crisis of 1917–1918, Hamilton v. Kentucky Distilleries & Warehouse Co., 251 U.S. 146, 40 S.Ct. 106, 64 L.Ed. 194. This court will not presume to deny the emergent character of the recited considerations, section 201(b) of Housing and Rent Act of 1947, supra, which impelled a frankly reluctant, (section 201(a) and (b), Id.,) Congress to enact the current statute touching rent regulation.

Nor is there any virtue in Stratton's denial of the court's jurisdiction. It is expressly conferred by Section 206(b) of the Housing and Rent Act of 1947, supra, as it was likewise provided for by Title 50 U.S.C.A.Appendix, § 925(a) and (c), on the day when this action was filed. And if, and to the extent that, the jurisdictional point is made by the defendant, Stratton, to rest on the circumstance of the filing of the suit in the twilight of the expiring act and before the dawn of the new one's operation, this court has no difficulty in perceiving its jurisdiction and the plaintiff's right to proceed. When he moved he was charged, in the same official capacity in which he still appears, with the administration and enforcement of the lapsing act; and in the instant of its termination—at an hour when practical resort to the court would be virtually impossible—he was formally to become responsible, under the newly approved act, for the administration and with very sharply circumscribing limitations the enforcement of similar and largely identical controls within a narrow, but important,

---

[3] Jurisdictionally, he professed in the amended complaint to rely not alone upon Section 206(b) of that act, but also upon Section 205(a) and (c) of the Emergency Price Control Act of 1942, as amended, and the court's "inherent equity jurisdiction appropriate to the circumstances hereinafter alleged."

[4] By which he undoubtedly means 206;

for no effort is made to recover under Section 205.

[5] It is doubtful whether the denial conforms to the requirements of Federal Rules of Civil Procedure, rule 8(b), 28 U.S.C.A. following section 723c. But no formal challenge to the adequacy of the answer has been made by any motion on the plaintiff's part.

segment of his former authority. So, when he filed the suit, the court's jurisdiction under the earlier law was manifest.[6] And neither he nor the court was compelled to stand mute, inert, and impotent while a regulated individual achieved a violative fait accompli, and thereby defeated the plaintiff's statutory authority, even momentarily. The court was not absurdly powerless to intercept what it would have been obliged shortly to nullify or to correct.

But the defendant, Stratton, appropriately places his principal reliance upon the alleged inadequacy of the evidence to support the plaintiff's claim for injunctive relief. And that brings the court to the facts, which will be set down as briefly as possible, though still at substantial length.

The ownership and employment as housing accommodations of the described premises, and their rental management by the defendant, Stratton, have already been adverted to. The City of Hastings is, and at all material times has been, within a controlled rental area. See schedule A attached to Rent Regulations under the Housing and Rent Act of 1947, and particularly 12 F.R. at page 4342; also Rent Regulation for Housing, 10 F.R. 3436, and particularly schedule A attached thereto.

When rental regulations first became operative under the Emergency Price Control Act of 1942, the described property was owned by one Ada Mae Ling, a widow of advanced age who resided in a small town some miles distant from Hastings. She filed the original registration statements in respect of the several residential units in the buildings here involved, in the Hastings area rent office. Her rents were collected by one Moise L'Heureux, who also acted as janitor for the property but only upon a part time basis.[7] As janitor, he maintained heat in the furnace during the heating season, trimmed the small, ill developed and constantly receding lawn during the summer period, installed and removed storm windows and screens at appropriate times, observed the general condition of the property, made minor repairs occasionally, and, when needed, arranged for the making by competent experts of more substantial repairs, and swept the stairs and small hall ways in the buildings outside the individual apartments. The last service required about two hours on each occasion and was performed about once a week, but irregularly and not at fixed times or intervals. Occasionally also the janitor washed or scrubbed the halls and corridors. Janitor service was required under the regulation to be provided by the lessor.

Mrs. Ling sold the apartments to Robert L. Stratton by deed dated February 21, 1947. To the cash payment the defendant, Stratton, as well as Robert L. Stratton, contributed; but much the larger part of the purchase price was procured by the negotiation of a loan on the security of the property, the papers in which were signed only by Robert L. Stratton. Since he alone is obligated on that paper and since he also contributed to the cash payment, the court treats him for the purposes of this case as the actual owner of the property. Possession was transferred on March 1, 1947, when the defendant, Stratton, also assumed the rental management of the property.

Effective June 1, 1947, the defendant, Stratton, discontinued the employment of L'Heureux as janitor and has not since employed anyone as janitor, except that, during June of 1947 L'Heureux, by previous arrangement with Stratton, removed the storm windows and hung the screens on the buildings. The defendant, Stratton, and Robert L. Stratton professed upon the

---

[6] What the defendant really intended to challenge in his answer is not the jurisdiction of the court over the subject matter of the action, which has to do with the type or class of case, but rather the sufficiency of the allegations of the complaint in the particular action to support the grant of relief to the plaintiff. Clearly, the complaint was, and the amended complaint is, adequate for that purpose.

[7] Originally, while in Mrs. Ling's employment he did janitor service for several properties. Later he got a full time job in other work, but continued, outside his regular working hours, to do janitor work at these apartments, procuring the assistance of a helper when one was needed, especially during the heating season. His work was upon that basis when Mrs. Ling sold the premises to Stratton. Infra.

trial, and in the making up of issues herein, to have assumed personally the responsibility for doing the work formerly performed by the hired janitor. But on June 5, 1947, both the defendant, Stratton, and Robert L. Stratton left Hastings for a holiday in California on which they remained away until about 1:30 o'clock in the morning of July 1, 1947. During the period of that absence, approximately twenty-seven days, no janitorial service and no custodial care whatsoever (excepting the removal of storm windows and hanging of the screens) was bestowed upon the property. No regular or consistent janitorial service has been rendered to the premises since July 1, 1947, and in the interval between then and the trial the grass on the lawn was cut once and the halls swept only once, or, possibly but improbably, twice, and were not shown to have been scrubbed at all. That grass cutting was adequate; but the uncertain and desultory cleaning service performed in July was manifestly insufficient to maintain the premises in becoming or reasonable order.

During the operation of the premises by Mrs. Ling and when she sold the property to Robert L. Stratton, an area, or segment of floor space, in the basement of the easterly building was utilized for the inactive storage of generally unneeded possessions of tenants of all of the buildings. The provision of such storage space was not listed in the registration sheets among the services compensated by the rent. No reference to such service appears in the printed form, nor was any mention of it written into the registrations. But it was unquestionably furnished. Shortly after the sale of the premises by Mrs. Ling, the defendant, Stratton, by written letters, notified the several tenants of the apartments to remove their respective personal effects from the storage space. After they had removed what they desired, the defendant, Stratton, burned the residue and the refuse accumulated from previous storage. This occurred not later than April, 1947; and no storage service has since been made available to any of the tenants. Upon the trial, the defendant, Stratton, as a witness, insisted that the space was there and could still be used for storage if adequate care

was taken to prevent the accumulation of combustible material as a fire hazard. But, after unconditionally ordering the tenants to withdraw their stored material, he never invited them again to use the space; and this was equally true before and after July 1, 1947.

Under the registration statements, the tenants of the apartments in the building at number 909 West 5th Street were not entitled to receive refrigerator service, but those in the apartments in the building at number 905 West 5th Street (being apartments 1 to 6 both inclusive) were entitled to such service. In the inception of the Stratton ownership and operation of the premises that service was given through the use of a central cooling system with connected refrigerating units located in the several apartments thus served. Shortly thereafter, the central refrigeration plant failed and was found to be badly out of repair. Moreover, the furnishing of refrigeration service in that manner to multiple residential spaces in a building has been found to be impracticable. The existing refrigeration system has not been repaired or placed back into operation and the Strattons do not intend to operate it. The defendant, Stratton, testified that he had ordered twelve new refrigerators, of which five had been delivered but only one installed by the time of the trial. He further testified without contradiction that all of the tenants, but one, had supplied their own refrigeration. His language may be understood as stating that those tenants had originally supplied auxiliary refrigeration even before the complete breakdown of the central cooling system, although it may also be construed to state that their provision of refrigeration entirely followed that casualty. But, whatever may have been the time of its inception, the provision of refrigeration facilities by the tenants coupled with inadequate or no refrigeration at the landlord's expense was the supplying by the lessees of a service which the lessor was obliged to furnish (so far as number 905 West 5th Street is concerned), and, to that extent, was the receipt of excessive rent by the lessor. That situation both existed before, and continued after, July 1, 1947.

Apartment 1 located at 905 West 5th Street and occupied by Victor Mockus was originally registered and rented at a monthly basis of $35 per month. On March 4, 1947, the area rent director, because of the lessor's discontinuance of the payment of the electric service bill, entered an order reducing the rent to $32 per month. Thereafter, on May 23, 1947, a further order was made by the director reducing the rent to $29 per month because the tenant had, meanwhile, purchased the furniture in the room which had theretofore belonged to, and been furnished by, Mrs. Ling and the space was no longer rented as a furnished apartment. The defendant, Stratton, demanded a review of that order and refused to recognize it as even temporarily operative, or to observe it. Prior to June 30, 1947, and after May 23, 1947, he refused to accept tenders of rent for the apartment at $29 per month. On June 3, 1947, the defendant, Stratton, advised Mockus that he had entrusted the controversy to his attorney, who shortly wrote to Mockus about it. Prompted by that letter Mockus conferred indecisively with the attorney. On the first day of July, 1947, Mockus tendered to Edward L. Stratton personally a check or checks for the amount of the June and July rent at the rate of $29 per month, which tender was rejected because of inadequacy in amount. The rent was unpaid for those two months at the time of the trial. The court disregards two items of information that have been drawn to its attention in the briefs. The first is a showing in behalf of the defendant, Stratton, that he personally requested and obtained the reduction of March 4, 1947, and also requested a reduction of $2 per month on the score of the furniture situation and thus initiated the examination which resulted in the reduction to $29, one dollar below his requested figure. The second is a statement by the plaintiff that the protest against the latter order was rejected by the regional administrator on July 31, 1947, thus finally placing the rental basis at $29 per month. Both statements are undoubtedly true; but the first item was not presented in evidence, and the second event occurred after the trial. If the court were persuaded that either might alone be decisive of the case, it would reopen the trial and allow further testimony. But there seems to be no necessity for that course.

The plaintiff charges the defendant with failure to provide heat in adequate intensity to heat some of the residential spaces. Regard being had to the season of the year, that charge could not be supported by any facts occurring in July. And it is not adequately supported factually for any other period. It was satisfactorily shown that the heating plant serving all three buildings was designed originally to heat only two of them and was inadequate to carry the heating requirements of the three structures, and would do so only by excessive firing; and that, late in the 1946–1947 heating season, it was in poor repair. It was also shown that in May and June of 1947 the apartment rooms were sometimes uncomfortably cool. But the spring and early summer of 1947 in southern Nebraska were unseasonably cool and brought chill discomfort on many occasions when the provision of heat would not normally be required and might not reasonably have been arranged for. The court does not find that the defendant, Stratton, was blameworthy upon that score at any time.

Shortly after acquiring control of the housing accommodations the defendant, Stratton, signified his intention to cause the vacation of the apartments in the buildings in order that he might effect some alterations in them and make some repairs upon them. In furtherance of that purpose he orally directed the several tenants to leave the premises not later than June 30, 1947. Some of them left. Others did not. On April 21, 1947 he prepared and signed a letter directed to L'Heureux in which he stated that he would not need L'Heureux's services after June 30, 1947;[8] that it was advisable to cease all rentals and close the apartments on that date; that rentals would be accepted for the period up to June 30, 1947, and L'Heureux might inform the tenants that they were free to vacate their apartments at any time before June 30, 1947; and that Stratton would serve legal papers where he found such a step to be

---

[8] L'Heureux was actually discharged as of May 31, 1947. Supra.

necessary. Then, the defendant, Stratton, carried that letter from apartment to apartment and exhibited it to his tenants as a means of disclosing to them his plans and wishes, and, at the same time, explained his demands for possession to them. In at least one instance he explicitly and sharply threatened eviction if the tenant failed to surrender possession at the end of June. And, before leaving for California, he instructed his attorney, Mr. Bruckman, to proceed after June 30, 1947, with the eviction of any tenants remaining thereafter in the apartments, or any of them, but only if and as the state of the law then operative should allow eviction.

There is no showing of any threat of eviction or attempt to evict between June 30, 1947, and the date of trial.

On June 2, 1947, in furtherance of his proposed program in reference to the buildings, the defendant, Stratton, in writing, directed the city water and light department to discontinue its service to the buildings of water and electricity[9] and to disconnect its facilities therefor as of July 1, 1947. That order was prospectively in effect on June 5, 1947, when the two Strattons went to California, although the water and light commissioner had stated to the defendant, Stratton, that if any tenant or tenants remained in the premises on and after July 1, 1947, who desired the continuance of the service and guaranteed payment for it, the service would be continued.

The Strattons were en route home from California by automobile on June 30, 1947. They learned then that the Housing and Rent Act of 1947 had been approved on that day. Some time thereafter, and quite clearly during the afternoon of June 30, 1947, the defendant, Stratton, telephoned from Grand Lake, Colorado, to Mr. Bruckman at Hastings and advised him of his own progress towards Hastings and instructed him to take no legal action to evict any tenants from the premises. And the Strattons then proceeded on to Hastings, which, as already recited, they reached

after midnight and in the early morning of July 1, 1947.

On the morning of July 1, 1947, not later than 8:30 a.m., and clearly before any process or order in this case was served upon him, and before he is shown to have had any knowledge of its pendency, the defendant, Stratton, went to the Hastings municipal offices and directed the cancellation of his order for the discontinuance of electric and water service.

Counsel for the plaintiff attempted upon the trial to secure an admission from the defendant, Stratton, that he had learned, on the afternoon or evening of June 30, 1947, of the institution of the action and the grant of the restraining order. Their purpose was to attribute the arduous return to Hastings and the cancellation of the order regarding utilities services (and perhaps also the direction to Mr. Bruckman for the withholding of eviction proceedings) to the suit rather than to any personal responsiveness to the newly approved statute on the part of the Strattons. Edwin L. Stratton denied the acquisition of such information. And the court is persuaded, in point of fact, that he testified truthfully in that regard. Plaintiff's counsel suggested the press and the radio as the likely conduits of such news. But it was not shown that the press on June 30, 1947, carried any intelligence of the case. The hour of its institution substantially negatives the probability of such publicity. Nor was the fact, or the extent, of radio coverage respecting the matter shown. And there was a complete default of proof of any such publicity either by the press or by the radio or otherwise through any instrumentality that would likely have reached the Strattons in Colorado, hundreds of miles away from Hastings.

What prompted the defendant Stratton's long distance telephone conversation with his attorney and the early morning call at the water and light office was not this suit. Neither was it any change of heart on the part of the Strattons. It was the newly

---

[9] This clearly did not include electric service to the individual apartments which the tenants provided; but it did include all water service to the apartments and electric energy for the lighting of the common areas in the buildings and possibly, though it is not clearly shown, power for the "laundry privileges" which the lessor was obliged to provide.

approved statute, of whose possible enactment and approval they had been aware for some time. When they learned of its certainty and imminent operation they needed and had no other spur to prompt them to finish their homeward journey with a night drive and thereby to intercept any action by the city water and light department under their earlier direction, which, with the new law in effect, would be violative of its terms.

In the light of the foregoing discussion, the court perceives no necessity for the formal narration of the evidence touching the defendant Stratton's plans for the remodeling and reconditioning of the properties or for any finding whether he has made a showing entitling him, under the current statute and regulation, to remove tenants who may be reluctant or unwilling to leave their apartments. This court is not called upon to express an opinion upon a prospective controversy which, at least at the time of the trial and under the evidence, was academic. It must be remembered that the evidence showed no threat of eviction made on or after July 1, 1947. And this decision is limited to the evidence.

The complaint and showing for restraining order alleged, and the amended complaint reaverred, the discontinuance of the garbage collection service which the landlord was obliged to furnish. In fact, the court, in granting its restraining order, was moved in substantial measure, though by no means entirely, by the showing on that point. But the plaintiff formally abandoned the charge upon the trial. And it is wholly without factual validity. Since the claim remains in the pleadings, however, it is proper very briefly to recite the fact touching it. In Hastings, garbage collection was, and is, effected by licensed collectors assigned to, and operating over, specified routes. During the absence in California of the Strattons, and entirely without their knowledge, the operator of the garbage collection route serving their property was arrested for the violation of a local regulation, fined, and deprived of his route which was assigned to another. In the interval of that transaction there was no garbage collection over the route, and garbage was allowed to accumulate with in-

evitable unsightliness and peril to health. But on its accomplishment and substantially before July 1, 1947, the service was resumed under the new management. Strattons were without fault or knowledge in the matter.

 Upon the foregoing facts the court concludes that, in certain particulars alleged against him, the defendant, Stratton, was not in violation of either of the regulatory acts. This conclusion has already been expressed with respect to the item of heating and also the interception of garbage collection, which the plaintiff concedes to be unfounded. It is equally clear as to the threats of forcible eviction and the direction of the termination of water and electric service.

The entire program of the defendant, Stratton, for the vacation of the apartments was oriented to the foreshadowed lapsation of the controls erected under the Emergency Price Control Act of 1942. They were scheduled, by force of the act itself, as amended, to end with the close of June 30, 1947. And that was the time he fixed for the surrender of possession by his tenants, through legal compulsion if necessary. And here the court rejects, in point of fact, the plaintiff's contention that the defendant, Stratton, ever threatened the extra judicial physical exclusion of his tenants or any of them from their quarters. It is, indeed, true that his bearing upon the point left something to be desired in the way of courtesy and diplomacy, and that, on one occasion, at least, he used language that could easily be construed to threaten actual physical removal. But in its context it manifestly meant a legal eviction. In its ultimate consequence, legal eviction may extend to "throwing out" a tenant, or to his being "put out into the street." And the quoted terms often mean nothing more arbitrary or violent than the execution of a valid and orderly judgment of ouster in a forcible detainer action. That, in the court's appraisal, was the full significance of the foreshadowings of the defendant, Stratton.

Now, when the defendant, Stratton, was seeking to promote the removal of the tenants he did not demand their involuntary

withdrawal before the end of June. And he might very well have supposed that by that time he would have the legal right, even arbitrarily, to demand the possession of his property. The Emergency Price Control Act of 1942, as amended, and the Rent Regulation for Housing were expressly limited in their vitality to that time—and they actually did expire then. Only the confusingly tardy enactment of the Housing and Rent Act of 1947 and promulgation thereunder of the current Rent Regulations prevented the complete elimination of federal controls over housing and rents. And neither the Strattons nor any one else will be considered in this court to have been bound by any prescience of that legislative and executive course. When they acted they considered—and were entitled to consider—that the realization on July 1, 1947, of their demands for possession would be entirely lawful. It is significantly to be noted, too, that their directions for legal eviction did not contemplate any action in that behalf by their counsel until on or after July 1, 1947.

What has just been said applies equally to their direction for the termination of electric and water service. When those instructions were given it could reasonably have been supposed that on July 1, 1947, the removal of those utilities would be beyond the concern or interception of the government of the United States. The intervening new legislation will not be allowed to make that unlawful which contemplated and constituted no illegal deed when it transpired. And when the latest congressional action on the point was taken, the Strattons proceeded, reluctantly perhaps, but with all possible expedition, to reach Hastings and cancel their instruction before any steps—then become unlawful—could be taken pursuant to it.

So, this court rejects the plaintiff's contention that there was anything unlawful in the Strattons' action in demanding and trying to get possession of the apartments by the end of June, 1947, or in the direction to disconnect certain services as of that date.

█ Touching the position taken by the defendant, Stratton, in the matter of the Mockus rent, the court concludes that it was violative both of the Emergency Price Control Act of 1942, as amended, and the regulation thereunder, and of the Housing and Rent Act of 1947 and its implementing regulation. The lessor's demand for review of the order reducing the rent on Apartment 1 did not suspend the force of the order. Bowles v. Lake Lucerne Plaza, 5 Cir., 148 F.2d 967. Any other view would invite the nullification of regulatory orders by obstructive reviews. And, pending that review, the Strattons had no right to disregard the reduction. And their effort in that direction occurred both before and after July 1, 1947.

█ The court concludes that the defendant, Stratton, violated both the earlier statute and regulations before July 1, 1947, and the current statute and regulations thereafter in the following four particulars:

1. In discontinuing or substantially reducing janitorial service to the apartment buildings;

2. In discontinuing the provision of storage space;

3. In discontinuing refrigeration service, to the extent that it has hereinbefore been found to have been discontinued; and

4. In demanding excessive rent for the Mockus apartment and refusing to accept tenders of lawful rent therefor. See discussion thereof, supra

█ If it be thought that responsibility for the exclusion of tenants from the storage service may be escaped by the circumstance that storage space was not a formally registered obligatory service, it must be remembered that the consistent provision of such space was established and is not questioned. And under both regulations (see Section 3, Rent Regulation for Housing, as amended and Section 3, Rent Regulations under the Housing and Rent Act of 1947) the landlord's obligation to continue to provide the services *actually provided* on the date determining maximum rent is made manifest. The registration, it is true, establishes a record of services that must be furnished; but its omission of some particular can not relieve a landlord

of the obligation to continue the provision of an admittedly rendered service.

■ Again, it may be thought that the three services just identified are of trivial significance. With that argument this court can not agree. Its views in that connection have been set out in Bowles v. Ormesher Brothers, D.C.Neb., 65 F.Supp. 791. See also Porter v. Rushing, 8 Cir., 157 F.2d 263.

■ In the interest of clarity the court notes, at this point, that it does not, and will not, grant any injunctive order in this case directly upon the ground that the lessor violated, while it was operative, the Emergency Price Control Act of 1942, as amended, and its rent regulation. That legislation is no longer in effect. Injunctive relief, which operates prospectively, if granted under its provisions and because of its violation, would simply be without legislative support. And the court must find its jurisdiction and power in these cases in the statute. But violations of the present act in this cause warrant relief.

■ However, the court may properly consider those earlier violations in so far as they tend to show the position and attitude of the defendant, Stratton, towards the entire program of rent regulation and thus give character and color to his more recent conduct. Standard Oil Co. v. United States, 221 U.S. 1, 31 S.Ct. 302, 55 L.Ed. 619, 34 L.R.A.,N.S., 834, Ann.Cas.1912D, 734. They are, on that account, not wholly irrelevant to the present inquiry.

■ The court, in this relation, as in others, can not agree with counsel for the plaintiff in their argument that, "realistically, it (The Housing and Rent Act of 1947) is an extension and amendment of the Emergency Price Control Act limited to rent control." That simply reflects a mistaken notion. It is a new act providing for a temporary control in the realm of housing, and rental prices and conditions in a different and more narrowly limited manner and with a more sharply confined regulatory authority, than the earlier act and its regulation erected. It does, indeed, deal

with a phase of the Price Control Act's coverage; and for the sake of an orderly transition and as a matter of time and expediency in legislative craftsmanship, it geared its regulations in large measure, and certain of its own provisions, into the former Act and the regulations thereunder. That does not make it an "amendment" or "extension" of the Price Control Act. Of course, the court will consider and has considered the judicial history of the former statute, so far as it reflects upon comparable points arising under the present legislation. But it will not allow any loose understanding of "amendment" or "extension" to import into the Housing and Rent Act of 1947 grants of power, either administrative or judicial, which the Congress significantly omitted from the statute, and, by omitting, allowed to die. Administrative control may not be perpetuated in that fashion. In fact, the legislative omission of earlier authority is a pointed admonition to the courts for its denial.

There remains the matter of the scope of the court's decree.

1. The restraining order will remain in force as a preliminary injunction without further order until the entry of the decree now announced.

2. The defendant Stratton's motion for dismissal will be denied.

3. The plaintiff's motion to amend to conform to proof will be granted and the amendment will be allowed.

4. The injunctive order presently announced will be effective from the time of its entry, rather than from the date of this ruling (the status quo being preserved, meanwhile, by the persisting operation of the existing order).

■ 5. The court's order will permanently[10] enjoin the defendant, Stratton, his agents, servants and employees, and any person or persons in concert with him, (a) *generally,* from committing, doing or performing any act in violation of Rent Regulation under the Housing and Rent Act of 1947 (12 F.R. 4331), as it now exists or as it may hereafter exist in consequence of

---

[10] "Permanence," of course, will not extend beyond the duration of the current statute, including any extension of it by amendment, or beyond the operation of the regulation.

amendment or of superseding regulation;[11] (b) *specifically* from demanding, exacting, collecting, accepting or receiving for any housing accommodation in the premises located at No. 905–909 West Fifth Street, or for any other housing accommodation in Hastings, Nebraska, owned or managed by him or towards which he does, shall or may occupy the relation of "landlord" within the definition of said Regulation, rent in any amount exceeding the maximum rent allowable therefor, either through the receipt of rent in money or other thing of value, in an amount exceeding the maximum rent allowable therefor under the Regulation, or through the withdrawal, withholding discontinuance, suspension, interruption, reduction, diminution, or contraction of the space, services, furniture, furnishings or equipment heretofore supplied or shown by registration statements in respect of such housing accommodation to be supplied by the landlord with the use or occupancy of such housing accommodation, including (particularly but without limitation) janitorial service, storage space and refrigerator service; and (c) in appropriate language, will mandatorily require him forthwith to restore or cause to be restored and thereafter to maintain and continue to such of said housing accommodations as are, or hereafter shall be, occupied by tenants full janitorial service, with due regard to the changing seasons of the year, storage space and, as to the housing accommodations in the building at 905 West 5th Street, refrigeration service.

6. The City of Hastings and Goodresult, in default herein, will be enjoined from the discontinuance or interruption of the water and electric service furnished by the landlord, so long as the premises or any part of them shall be tenanted.

Very careful consideration has been given by the court to the demand by the plaintiff that the order explicitly forbid the removal or eviction of "any tenant upon any ground or for any purpose not expressly permitted by statute in such case made and provided for" and his argument supporting it. The plaintiff has in mind the provisions, touching eviction, of Section 209(a) of the Housing and Rent Act of 1947.

The court is persuaded that it ought not to grant that request. The policing of evictions through resort to the courts for injunctions is not committed by the current act to the expediter. Nor does the presently effective regulation claim for the expediter in his own official capacity the power of control by suit over evictions. In that respect, there is a basic departure from the sweeping authority entrusted by the Emergency Price Control Act of 1942, as amended, to the Price Administrator, Title 50 U.S.C.A.Appendix, Section 925(a), and reflected in Section 6 of the Rent Regulation for Housing.

This suit was expressly bottomed on Section 206(b) of the Housing and Rent Act of 1947. That section must be carefully read in an appraisal of the extent to which the Expediter may demand injunctive relief as his right. It is only in the face of the actual or threatened violation by a person of section 206(a) of the Act forbidding the offering, solicitation, demanding, acceptance or receipt of overceiling rent, that the expediter may apply to the court for relief. And the relief for which he may apply is narrowly defined as "an order enjoining such act or practice, or * * * an order enforcing compliance with" Section 206(a). And the court, upon a showing of such actual or threatened overceiling charge (including, of course, overcharges through the interception or curtailment of service), is directed to grant without bond "a permanent or temporary injunction, restraining order, or other order." Now, those designated orders, including the generality "other order," must be appropriate to the phase of the Act

---

11 This generality of injunctive relief appears to be in harmony with the ruling and reasoning of Bowles v. Luster, 9 Cir., 153 F.2d 382. See also the discussion in Bowles v. Leithold, 3 Cir., 155 F.2d 124. It may be observed that the plaintiff does not, by prayer, seek any injunctive order in general terms against the violation of the Act itself as distinguished from the regulation. Therefore, discussion is not gratuitously or presumptuously offered touching the propriety or impropriety of such an order.

182

whose injunctive enforcement alone is thus entrusted to the expediter. The words, "other order," may not be so expanded by construction as to set him as a watch upon the entire field covered by the Act with plenary litigating authority. The Congress, by its designation of Section 206(a) as the matter in respect of which he might seek relief, and its omission of any express grant of authority to sue in other respects, signified clearly its intention to restrict his field of litigation. That intention is inescapably establshed when the "Enforcement" provision of the 1947 Act, Section 206(b), is read in comparison with the sweeping "Enforcement" section of the Price Control Act, Title 50 U.S.C.A.Appendix, § 925.

It has been said in the brief of the plaintiff that other courts have granted injunctions against evictions under the present act. But no considered analysis supportive of the right or power to do so has been offered.

█ And, finally, and significantly, even though the power to enter the order asked were granted, no showing of a violative act looking to eviction has been made upon the trial of the case. See discussion on this point, supra. The court, therefore, would decline to intrude by way of injunction into that subject. It must be remembered that in eviction cases the state courts possess the power and are under the duty to protect tenants in their federally guaranteed rights. And in the absence of persuasive direction to the contrary, the tenant is the party who should assert and maintain those rights. This court is very reluctant to suppose that a Nebraska court will nullify the provisions of a valid congressional act. And, unless it does it will allow evictions only within the framework of the Housing and Rent Act of 1947.

Counsel for the plaintiff will promptly present an injunctive order in accordance with the foregoing announcement of ruling. Let it be clearly understood that in that labor, counsel will not be required or expected to follow the language of the court in the announcement, but will employ language appropriate to the purposes indicated.