**CREEDON, Housing Expediter, v. CLOYD W. MILLER CO. et al.**

Civil Action No. 25073.

District Court, N. D. Ohio, E. D.

Nov. 20, 1947.

Paul Marshall, of Cleveland, Ohio, for plaintiff.

Paul S. Knight, of Cleveland, Ohio, for defendants.

JONES, District Judge.

In this action the Housing and Rent Act of 1947, 50 U.S.C.A.Appendix, § 1881 et seq., has been challenged as unconstitutional because it undertakes to fix and regulate local rentals and interferes with local affairs and rights not subject to congressional power. The defendants, against

whom a permanent injunction is sought, announced to their tenants that on August 1, 1947, the rentals in suites of the defendants' apartment in the City of Cleveland, Ohio, would be increased by percentages or sums and methods contrary to the express provisions of the Housing Act of 1947 and regulations authorized thereunder.

A preliminary injunction was granted on July 21, 1947, without contest and without a hearing on the questions now raised by the answer of the defendants, posing the constitutional question. The matter, therefore, is before me for final determination on the pleadings there being no factual controversy. See stipulation dated July 21, 1947.

The Housing and Rent Act of 1947 consists of two titles: Title 1 deals with amendments concerning housing loans, priorities, etc.; Title 2 sets forth the policy of and authority for the control of rents and evictions by the Housing Expediter.

In Section 201 of Title 2, Congress reaffirms the declaration in the Price Control Extension Act of 1946 concerning the undesirability of unduly prolonged controls in peace time. However, "Congress recognizes that an emergency exists" and that further controls are desirable.

Under Sections 201 and 202 of Title 2, it is not possible for the Housing Expediter to extend rent control to any area which had not been designated a "defense-rental area" prior to March 1, 1947, and in which rents were not regulated under the Emergency Price Control Act on March 1, 1947.

Section 203(a) provides:

"After the effective date of this title, no maximum rents shall be established or maintained under the authority of the Emergency Price Control Act of 1942, as amended, with respect to any housing accommodations."

Under Section 204(c) the Housing Expediter is authorized and directed to remove any or all maximum rents before this Title ceases to be in effect if, in his judgment, the need for such controls no longer exists. The remainder of Title 2 consists of enforcement and eviction provisions.

Section 206(b) authorizes the Housing Expediter to apply for an injunction whenever in his judgment any person has engaged or is about to engage in an act in violation of subsection (a) of Section 206 which prohibits the demand or receipt of rent in excess of the prescribed maximum rent.

■ The power of Congress to enact legislative measures is not lightly to be questioned. Only if some substantial constitutional right of the citizen has been infringed or impaired should the courts strike down an act of the Congress. What the court thinks about the law is of no consequence if the congressional measure does not infringe the constitutional rights of the defendants.

■ It is contended that the continuance of rent regulation stems from the war powers earlier exercised by the Congress and that there has not yet been any official termination of the war; but the President's proclamation of the termination of hostilities was issued on December 31, 1946 and although this may not have been an official termination of the war, nevertheless it inaugurated peace-in-fact.

■ In the absence of any words or provisions to that effect in the new rent control Act there is no basis for a conclusion that the Congress was intending to act under its war powers. The Act is not by any express words or implied provisions tied up with any war powers of the Congress. It gives, as one might say, the kiss of death to rent regulation but hangs on for a few months with an impotent embrace. The Act speaks of the existence of an emergency without any statement of what the emergency is. If Congress was intending to continue the exercise of war powers residing within its constitutional prerogative, there are no words, and no fair implication may be found in the provisions of the Act, to support such intention. The Act of 1946 and earlier Acts were allowed to lapse. They were not amended or extended. Section 203 provides that the authority to fix maximum rents under the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 901 et seq., was to be terminated on the effective date of the 1947 Rent Act. This is new legislation with no plausible consti-

tutional basis for its validity. It has been stated that courts will take judicial notice of the fact that the war officially has not been terminated; but under the guise of an artificial judicial notice of an existing emergency not named, courts should not indulge in the deception of a fiction not supported by facts.

■ In recent years that have gone many thoughtful people have questioned the constitutional right of Congress to authorize local rent control. The Great Emergency of the war rather influenced patriotic people to submit to such regulation although believing that it was, even in war time, beyond the reach of federal congressional or executive power. From the earliest times high legal authorities have held that the existence of a state of war did not nullify the provisions of the Constitution. How now can it be asserted that there is a single clause in the Federal Constitution, plausibly interpreted, that gives the government the right to regulate local rents in peace time?

It has been confidently asserted that in peace time there should be no emergency that the intelligent application of sound economic principles could not overcome within the framework of constitutional government. There is nothing in this law that stems from constitutional origin or power. The emergency created by housing shortage came into existence long before the war. It was not wholly due to war conditions and property required by the government for low cost housing with low rentals during the war was condemned and compensation paid the owner. What, in effect, the Act of 1947 does is to provide low rentals for certain groups without taking the property or compensating the owner in any way. To impose federal restrictions upon the free use of the defendants' property is as effective a taking as to condemn it.

That the Congress was not relying upon war powers is evident from the fact, among others, that it provided for a termination of the Housing and Rent Act of 1947 without regard to the official termination of the war and also provided even that the Housing Expediter be "authorized and directed to remove any or all maximum rents before this title ceases to be in effect" if, in his judgment, the need for such controls no longer exists. Section 204(c). Thus it is left to the judgment of the Expediter, throughout the nation to determine when the emergency is over in respective localities. The Act in this respect lacks in uniformity of application and distinctly constitutes a delegation of legislative power not within the grant of Congress. Even the policy of Congress, as expressed in the words of Section 201 of the Act, is inconsistent with an intention to continue control and regulation until the official end of the war.

The right to control local affairs reserved to the states by the Constitution has been pretty much emasculated by the extension of Federal power. Certainly if the rights of the defendants, as guaranteed by the Constitution, are to be restored, such control and regulation must be terminated. If local rent control and regulation are to be continued until what are asserted to be the evil effects of the war shall have passed away, there is no hope of an early restoration of the constitutional rights of these defendants.

Doubts, which earlier I entertained of the constitutional validity of the Housing and Rent Act of 1947, by examination and study have been crystallized into a conviction that it has no constitutional support in any provision of that instrument.

While it is true that the Act is to expire in a few months there is all the more reason for a speedy decision by the court and before the question becomes moot and of no benefit to those whose rights are at stake.

My considered judgment now is that the Act is without constitutional validity and that the plaintiff is not entitled to the relief demanded.

Accordingly, the preliminary injunction heretofore granted will be dissolved and the complaint dismissed.