### WOODS v. BENSON HOTEL CORPORATION.

### Civ. A. No. 2623.

District Court, D. Minnesota, Fourth Division.

Jan. 15, 1948.

William S. Kaplan, Chief, Litigation Unit, Regional Rent Office Region VI, of Chicago, Ill., and Alex Dim, Area Rent Atty., Minneapolis-St. Paul Defense Rental Area, of St. Paul, Minn., for plaintiff.

Rolf Ueland and Marcus G. Sundheim, both of Minneapolis, Minn., for defendant.

JOYCE, District Judge.

This is an action by the Housing Expediter under the Housing and Rent Act of 1947, 80th Cong., Public Law 129, Ch. 163, 1947 U.S.C. Cong., Service, p. 200, 50 U.S.C.A. Appendix, § 1881 et seq., to enjoin defendant from charging over-ceiling rent and to compel refunds to tenants of any over-ceiling rents already collected. Defendant, by counter-claim, seeks to enjoin plaintiff and the Area Rent Director from interfering in any manner with the collection, receipt, or retention by defendant of any rents whatsoever. The present proceedings arose from motions for a preliminary injunction by both parties. The facts were stipulated.

The Housing and Rent Act of 1947 (hereinafter called the Act) provides for a system of rent control over "controlled housing accommodations". Section 202(c) of the Act declares this phrase to mean " \* \* \* housing accommodations in any defense-rental area, except that it does not include—(1) those housing accommodations, in any establishment which is commonly known as a hotel in the community in which it is located, which are occupied by persons who are provided customary hotel services such as maid service, furnishing and laundering of linen, telephone and secretarial or desk service, use and upkeep of furniture and fixtures, and bellboy service".

Section 204(d) provides: "The Housing Expediter is authorized to issue such

regulations and orders, consistent with the provisions of this title, as he may deem necessary to carry out the provisions of this section and section 202(c)."

Pursuant thereto the Housing Expediter issued Rent Regulation for Controlled forms in Rooming Houses and other Establishments on July 1, 1947, 12 F.R. 4302, which in its applicable parts is as follows:

"Sec. 1—Definitions—'Hotel' means any establishment which is commonly known as a hotel in the community in which it is located and which provides customary hotel services such as maid service, furnishing and laundering of linen, telephone and secretarial or desk service, use and upkeep of furniture and fixtures, and bellboy service. Provided however, That if 75 per cent or more of the units in the establishment are self-contained units including a bathroom and kitchen and were rented on other than a daily term of occupancy on June 30, 1947, the establishment shall not be considered a hotel for the purpose of this regulation and the Housing and Rent Act of 1947."

"Sec. 1 (b) This regulation does not apply to the following:

\* \* \* \* \* \*

"(8) Accommodations in hotels, motor courts, tourist homes and other establishments. (i) Those housing accommodations, in any establishment which is commonly known as a 'hotel' (see definition of "hotel" in section 1) in the community in which it is located, which are occupied by persons who are provided customary hotel services such as maid service, furnishing and laundering of linen, telephone and secretarial or desk service, use and upkeep of furniture and fixtures, and bellboy service; \* \* \* Provided, however, That all such rooms referred to in this paragraph shall be subject to this regulation unless the landlord files in the area rent office an application for decontrol of such accommodations on a form provided by the Expediter within 30 days after July 1, 1947, or within 30 days after the date of first renting, whichever is the later; And provided, further, That if a landlord fails to file said application for decontrol within the applicable specified period, such housing accommodations shall be and remain subject to the provisions of

this regulation until the date on which he files said application."

Defendant filed an application for decontrol under this regulation, but there is no evidence of any action taken by plaintiff with respect thereto. On August 8, 1947, the above regulations were amended, 12 F. R. 5457, by substituting the word "including" for the words "such as" following the words "customary hotel service"; the part of the definition of hotel in section 1 following the words "Provided however" was eliminated, and the time specified by section 1(b) (8) for filing applications for decontrol was extended another thirty days. On September 5, 1947, plaintiff issued Housing and Rent Act Memorandum No. 21, which was his official interpretation of the regulations. It was not however, published in the Federal Register. On September 29, 1947, defendant filed an application for decontrol on the revised forms. This application was denied by the Area Rent Director as to 190 dwelling units in the Hotel Leamington by order dated October 16, 1947, the reason given being that on June 30, 1947, these units did not receive all five of the so-called specified services, namely, maid service, furnishing and laundering of linen, telephone and secretarial or desk service, use and upkeep of furniture and fixtures, and bellboy service. The 190 units involved each contain kitchen and bath and are rented on a weekly or monthly basis for a charge which covers (with occasional exceptions) the use of the unit space, carpets, gas stove, refrigerator, curtains or draperies, and window shades. Additional charges are made if the tenant desires regular maid or linen service, or furniture service. As of June 30, 1947, all of these units received telephone and desk or secretarial service and bellboy service; 7 received maid service; 31, linen service; 66, complete furniture; and 115, partial furniture service. None received all the services. On June 30, 1947, each of these services was and since that date has been available to tenants in the sense that they might request and receive it within a reasonable time by paying an additional charge, but not otherwise. On and since August 1, 1947, defendant has requested, billed, and received from tenants of 189

of these units rents over and above the maximum rent in effect on June 30, 1947. With only a few exceptions these units continue to receive only those services which they were receiving on June 30, 1947.

Defendant contends (1) that the Act is unconstitutional in that (a) in passing it Congress exceeded its legislative powers and (b) it violates due process, and (c) that there is an unconstitutional delegation of legislative authority to an administrative body; (2) that if the Act is held to be constitutional then Section 202(c)—the decontrol section—is self-executing and the Housing Expediter had no right to promulgate regulations requiring any action by him before an establishment is decontrolled; (3) the regulations as applied by the Housing Expediter in this case are not consistent with the Act and hence are invalid.

## 1. The Constitutional Issue.

■■■ The trend of decisions dealing with Congressional enactments bearing upon legislation regulatory in character tends to support the constitutionality of the act in question on the theory that an act of Congress is presumed to be constitutional and may not be lightly struck down by the courts. As Judge Jones said in Creedon v. Miller, D.C.Ohio, 1947, 74 F.Supp. 546, 547, "only if some substantial constitutional right of the citizen has been infringed or impaired should the courts strike down an act of Congress." The Housing and Rent Act was designed to attempt to remedy the consequences of upset economy and distorted social life which arose out of the war and which did not end immediately upon the cessation of the shooting war. In the case of Block v. Hirsh, 256 U.S. 135, at page 154, 41 S.Ct. 458, 459, 65 L.Ed. 865, 16 A.L.R. 165, dealing with an Act the provisions of which Congress declared were made necessary by emergencies growing out of World War I, Justice Holmes said: "But a declaration by a legislature concerning public conditions that by necessity and duty it must know, is entitled at least to great respect. In this instance Congress stated a publicly notori-

ous and almost world-wide fact. That the emergency declared by the statute did exist must be assumed, and the question is whether Congress was incompetent to meet it in the way in which it has been met by most of the civilized countries of the world." See also Creedon v. Stratton, D.C.Neb., 1947, 74 F.Supp. 170; Granberry v. Creedon, D.C, Colo.1947,[1] and Creedon v. Seele, D.C.S.D. Ill., 1947, 75 F.Supp. 767. Cf. Lewis v. Anderson D.C.Cal., 1947, 72 F.Supp. 119.

That the Act is a proper exercise of the war powers of Congress, see Fleming v. Mohawk Co., 331 U.S. 111, 67 S.Ct. 1129; Hamilton v. Kentucky Distilleries Co., 251 U.S. 146, 40 S.Ct. 106, 64 L.Ed. 194.

Nor does it violate due process. Bowles v. Willingham, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892; Block v. Hirsh, 256 U.S. 135, 41 S.Ct. 458, 65 L.Ed. 865, 16 A.L.R. 165; Marcus Brown v. Feldman, 256 U.S. 170, 41 S.Ct. 465, 65 L.Ed. 877. The delegation of authority to the Expediter is of the same nature as that approved in Bowles v. Willingham, supra, under earlier price control legislation. In my judgment the Act is constitutional.

## 2. Is Section 202 of the Act Self-executing?

■■■ Section 202(c) (1) excludes from "controlled housing accommodations" those establishments meeting certain requirements. Defendant claims that it meets the statutory test and that therefore the Housing Expediter has no jurisdiction at all with respect to the Hotel Leamington. However, by the express language of Section 204(d) "the Housing Expediter is authorized to issue such regulations and orders, consistent with the provisions of this title, as he may deem necessary to carry out the provisions of this section and section 202(c)." This express reference to 202(c) when coupled with the wording of that section makes it apparent that Congress intended to give the Expediter authority to issue regulations so as to make the section more specific in view of the policy and purposes of the Act. Furthermore, it authorizes the Expediter, if he deems it advisable (as he has), to require an orderly

---

[1] Unreported.

process of decontrol; that is, those who believe themselves within the exception of section 202(c) can be required to file applications with the Expediter, who must approve them before decontrol is effectuated (or if approval is improperly denied, relief may be had by proper judicial proceedings). Such a requirement by the Expediter does not seem onerous, objectionable, or a transgression of his statutory authority. The only alternative would be to leave each person, if he believed himself to be decontrolled, to act at his peril. There would be no administrative procedure to which he could have recourse to determine his rights. Such a policy would be chaotic in effect and the policing staff of the Expediter would have to be greatly enlarged in order to obtain even a semblance of compliance with the law. It may well be a burden to many persons to continually fill out the many forms required by governmental agencies, but that burden is the price of living in a society that has determined to exercise some degree of control over economic affairs. It is not for this court to negate that policy, at least in the case at bar.

3. Under the Regulations did Plaintiff Act Properly in Refusing to Approve Defendant's Application for Decontrol of the 190 Units of the Hotel Leamington here Involved?

Since it is conceded that the Hotel Leamington is commonly known as a hotel, the questions remain: (a) What is the meaning of the phrase "persons who are provided customary hotel services"? (b) Is the use of the word "including" in the amended regulation instead of the phrase "such as" in the Act a valid exercise of the regulatory power of the Expediter? (c) Is the amended regulation of August 8, 1947, an attempt to retroactively determine defendant's rights under the law in an illegal manner—particularly with respect to the use of "including" instead of "such as"?

■ (a) The Expediter claims that the phrase "are provided" means that the tenants must receive all of the services enumerated in the definition of hotel, or in lieu of actual receipt, they must be entitled to receive them without additional charge.

Counsel in support of this contention argued that Housing and Rent Act Memorandum No. 21 issued September 5, 1947, recites this viewpoint. However, while administrative interpretation is ordinarily entitled to great weight, Bowles v. Seminole Rock Co., 325 U.S. 410, 65 S.Ct. 1215, 89 L.Ed. 1700, this interpretation was not published in the Federal Register in contravention to the express requirement of Section 3(a) (3) of the Administrative Procedure Act, 5 U.S.C.A. § 1002(a) (3). Section 3 does not say what the sanction is if such interpretation as that involved here is not published, and no other court so far as I am advised has had this question before it, but since the mandate of section 3 is clear, direct and positive, the only way it can be enforced is to say that acts of administrative bodies not conforming to section 3 will not be recognized by the courts as official acts, leaving it undecided whether there might be interpretations which being classified as mere "rulings" are not covered by section 3(a). Cf. Leg.Hist. Administrative Procedure Act, Senate Doc. 248, 79th Congress, pp. 199, 355. So that while the interpretation offered may thus lose much of its force, it is nevertheless entitled to consideration as the Expediter's construction of the regulation just as any party may urge upon a court any construction which he believes to be applicable and persuasive to a proper determination of the point in question.

Defendant contends the words "are provided" means "available"; thus, a house provides shelter whether or not anyone is inside; a wife may provide a meal for her husband although he may not come home to eat it. But this does not conform to the ordinary and natural meaning of these words as they appear in the Act. Webster's International Dictionary, 1932 Edition, defines "to provide" as "to furnish; to supply". Thus one is furnished with food—he receives food. One is provided with that which he receives. The words "are provided" imply "are received". The validity of this interpretation is reenforced by the fact that defendant has argued in its brief that Congress intended to decontrol hotels because the services they supply contain a large element of labor cost. Obviously

such costs have risen of late but the management suffers not at all from the increased cost of a service it is not actually supplying. To say otherwise would mean that a tenant never having received maid, nor linen, nor furniture service would nevertheless be without the protection of rent control because the landlord in supplying other tenants with such services has been confronted with a condition of rising costs. But, defendant argues, how can it be said that the service must be received by the tenant, or be available without extra charge in the case of maid, linen, or furniture service, when admittedly a tenant who is provided with bellboy service knows he must tip the boy if he wants any service in the future, or if he makes an outside telephone call he must pay for it? The answer to this argument lies in the fact that the services involved are of varying natures. Bellboy service implies only the availability of bellhops, and tipping is normal practice. Similarly, hotel tenants do not expect to make outside telephone calls without charge. But a hotel guest does expect a maid to clean his room and to be furnished linen as a part of the ordinary charge for his room.

Furthermore, to the extent that this is a review of the action of the Area Rent Director in denying defendant's application for decontrol, consideration must be given to the basis for the denial, to-wit: that the tenants of these 190 units did not on June 30, 1947, receive all the five specified services. In reviewing administrative action the test is whether it is consistent with the statute and necessary. This brings back into the picture the interpretation which the Expediter adopted in his memorandum of September 5th and which was rejected as the administrative interpretation in the discussion under point 3(a) supra, but defendant cannot complain inasmuch as the effect of this interpretation was implicit in the questions asked on revised form D-95 (plaintiff's Exhibit 5) which defendant filled out. Form D-95 expressly states that to be decontrolled the housing units must have received the five specified services on June 30, 1947, and as the foregoing discussion suggests, such a construction by the Expediter is at least reasonable and is not inconsistent with the language of the Act. In holding then that the services which are "provided" must be "received" by the tenants, the court can arrive at this conclusion by either of two approaches: (1) by applying the ordinary rules of construction: (2) by treating the matter as one of judicial review of administrative action.

(b) *Is the use of the word "including" in the amended regulation instead of the phrase "such as" a valid exercise of the regulatory powers of the Expediter?*

When Congress in creating a category of decontrolled housing by defining it as accommodations providing customary hotel services such as the five services heretofore enumerated and expressly gave the Expediter authority to issue regulations relating thereto, it apparently was exemplifying what it meant by "customary hotel services", and the Expediter in the proper exercise of his discretion might expand the list of the specified services. His discretion should not be measured in terms of a straight jacket. Accordingly I am of the view that the use of the word "including" in the amended regulation is proper and consistent with the Act. Even without the amended regulation I would be inclined to interpret the phrase "such as" to mean the five enumerated services plus any others which are found to be customary in the community. The Housing and Rent Act of 1947 is remedial, the purpose being to prevent inflation and to preserve social stability during the post-war housing emergency, the gravity of which is a matter of common knowledge, while providing for a relaxation of controls in appropriate cases. To interpret the law as plaintiff advocates does not contravene the intent of Congress since the Act provides in other sections many ways for landlords to obtain increases in rentals to an extent impossible under prior rent control measures. Relaxation of controls does not mean abandonment.

(c) *The issue of retroactivity.*

The court believes that this issue is disposed of adversely to defendant's contentions by the holding and Note in the case of Utah Hotel Co. v. Industrial Commission, 1944, 107 Utah 24, 151 P.2d 467, 153 A.L.R. 1176.

750

## Other Issues.

The issue as to whether or not the facts as of June 30, 1947, are determinative of the right to decontrol is not material here since by stipulation it appears that there has been no change in the services provided these 190 units since that date.

 The issue as to the right of the defendant to contest the validity of the action of the Area Rent Director without having exhausted his administrative remedies as provided in Rent Procedural Regulation 1 issued September 4, 1947, Title 24 C.F.R. pt. 840, 12 F.R. 5916, cf. Yakus v. United States, 321 U.S. 414, 64 S.Ct 660, 88 L.Ed. 834, was not pressed on trial by plaintiff in the interest of getting a ruling on the merits. The court acceded to such desire, recognizing that it does not involve its jurisdiction. Myers v. Bethlehem Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638.

## Conclusion.

Plaintiff, having shown a valid order identifying the 190 units as controlled and a refusal to comply therewith by defendant, is entitled to a temporary injunction under Section 206(b) of the Act, and the motion of the defendant is accordingly denied.

Findings of Fact, Conclusions of Law and an Order for Writ will be filed in accordance with the views herein expressed, and this Memorandum will become a part thereof.

An exception is allowed defendant.

## Findings of Fact

1. Tighe E. Woods is the duly appointed, qualified and acting Housing Expediter, Office of the Housing Expediter, and brings this action and motion for a temporary injunction for and on behalf of the United States, pursuant to the provisions of Section 206(b) of the Housing and Rent Act of 1947, 80th Cong., Public Law 129, Ch. 163, 1947 U.S.C. Cong. service, p. 200, 50 U.S.C.A. Appendix, § 1896(b).

2. The Court has jurisdiction by reason of Section 206(b) of the Housing and Rent Act of 1947, hereinafter referred to as the "Act".

3. At all times mentioned herein, on and after July 1, 1947, there was continuously in full force and effect, issued pursuant to Section 204 of the Act, the Rent Regulation for Controlled Rooms in Rooming Houses and other Establishments (12 F.R. 4302) as amended, hereinafter called the "Regulation".

4. All of the acts and practices and violations complained of herein as are hereinafter more fully set forth, occurred in the City of Minneapolis, County of Hennepin, State of Minnesota.

5. Defendant has engaged, and is about to engage, in acts and practices, hereinafter more particularly alleged, which constitute or will constitute, violations of Section 206 (a) of the Act and of other provisions of law applicable in the premises.

6. The defendant, Benson Hotel Corporation, a corporation, was at all times material hereto, the owners, operator and manager of premises consisting of a certain establishment containing rooms or housing accommodations, operated under the name of Hotel Leamington, and situated at 1014 3rd Avenue, South, Minneapolis, Minnesota. Said housing accommodations are located within the Defense-Rental Area of Minneapolis-St. Paul, and are so designated by the Regulation.

7. The aforesaid establishment contains numerous rooms or housing accommodations units, included in which are 190 rooms or housing accommodations units which constitute controlled rooms or housing accommodations units within the meaning of the Act and the Regulation. At all times material herein, said controlled rooms or housing accommodations units have been, and are now, let and rented out to various tenants for dwelling units, and the said defendant has been, and is now, collecting and receiving rents from the tenants for the use and occupancy of all the said controlled rooms or housing accommodations units in said establishment.

8. At all times material hereto, the lawful maximum rents for the use or occupancy of the rooms contained in said establishment were duly fixed and prescribed, prior to June 30, 1947, by the Rent Regulation for Transient Hotels, Residential Hotels, Rooming Houses and Motor Courts (8 F.R. 7334) duly issued and effective under Section

2(b) of the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A. Appendix, § 901 et seq., and for all times after June 30, 1947, the lawful maximum rents for the use or occupancy of the aforesaid controlled rooms or housing accommodations units in said establishment were duly fixed and prescribed by the Regulation duly issued and effective under Section 204 of the Housing and Rent Act of 1947 and known as the "Rent Regulation for Controlled Rooms in Rooming Houses and Other Establishments", as amended, (12 F.R. 4302), hereinabove and hereinafter referred to as the "Regulation".

9. Section 202(c) of the Act defines the term "Controlled Housing Accommodations" to mean housing accomodations in any Defense-Rental Area, excepting therefrom: "(1) those housing accommodations, in any establishment which is commonly known as a hotel in the community in which it is located, which are occupied by persons who are provided customary hotel services such as maid service, furnishing and laundering of linen, telephone and secretarial or desk service, use and upkeep of furniture and fixtures, and bellboy service; * * *."

10. Section 204(d) of the Act provides that the Housing Expediter is authorized to issue such regulations and orders consistent with the provisions of the Act as he may deem necessary to carry out the provisions of Section 204 and Section 202(c) of the Act.

11. By Section 1 of said Regulation issued on July 1, 1947 (12 F.R. 4302), in its applicable parts, is as follows:

"Section 1. Definitions and scope of this regulation.—'Hotel' means any establishment which is commonly known as a hotel in the community in which it is located and which provides customary hotel services such as maid service, furnishing and laundering of linen, telephone and secretarial or desk service, use and upkeep of furniture and fixtures, and bellboy service: Provided, however, That if 75 percent or more of the units in the establishment are self-contained dwelling units including a bathroom and kitchen and were rented on other than a daily term of occupancy on June 30, 1947, the establishment shall not be considered a hotel for the purposes of this regulation and the Housing and Rent Act of 1947."

"Section 1(b)—This regulation does not apply to the following:

"(8) Accommodations in hotels, motor courts, tourist homes and other establishments. (i) Those housing accommodations, in any establishment which is commonly known as a 'hotel' (See definition of "hotel" in section 1) in the community in which it is located, which are occupied by persons who are provided customary hotel services such as maid service, furnishing and laundering of linen, telephone and secretarial or desk service, use and upkeep of furniture and fixtures, and bellboy service; (ii) Rooms in any motor court; (iii) Rooms in any tourist home serving transient guests, exclusively; (iv) Rooms in other multiple-unit establishments (see definition "other establishments" in section 1) which are occupied by persons who are provided customary hotel services such as maid service, furnishing and laundering of linen, telephone and secretarial or desk service, use and upkeep of furniture and fixtures, and bellboy service; Provided, however, That all such rooms referred to in this paragraph shall be subject to this regulation unless the landlord files in the area rent office an application for decontrol of such accommodations on a form provided by the Expediter within 30 days after July 1, 1947, or within 30 days after the date of first renting, whichever is the later; And provided, further, That if a landlord fails to file said application for decontrol within the applicable specified period, such housing accommodations shall be and remain subject to the provisions of this regulation until the date on which he files said application.

12. By reason of Amendment 1 to Section 1, said Regulation issued and effective August 8, 1947 (12 F.R. 5457) in its applicable parts is as follows:

"Hotel means any establishment which is commonly known as a hotel in the community in which it is located and which provides customary hotel services including maid service, furnishing and laundering of linen, telephone and secretarial or desk service, use and upkeep of furniture and fixtures, and bellboy service."

"Section 1 (b) (8) Rooms in hotels, motor courts, tourist homes, and other establishments. (i) Rooms in a 'hotel' (See definition of 'hotel' in section 1) which are occupied by persons who are provided customary hotel services including maid service, furnishing and laundering of linen, telephone, and secretarial or desk service, use and upkeep of furniture and fixtures and bellboy service; (ii) rooms in any motor court; (iii) rooms in any tourist home serving transient guests, exclusively; (iv) rooms in other establishments (See definition of 'other establishments' in section 1) which are occupied by persons who are provided customary hotel services including maid service, furnishing and laundering of linen, telephone and secretarial or desk service, use and upkeep of furniture and fixtures, and bellboy services: Provided, however, That all such rooms, except rooms in motor courts, referred to in this paragraph shall be subject to this regulation unless the landlord files in the area rent office an application for decontrol of such rooms on a form provided by the Expediter within 60 days after July 1, 1947, or within 30 days after the date of first renting, whichever is the later: And provided, further, That if a landlord fails to file said application for decontrol within the applicable specified period, such rooms shall be and remain subject to the provisions of this regulation until the date on which he files said application."

13. At all times material herein, on and after June 30, 1947, the aforesaid establishment of the defendant contained 190 rooms or dwelling units therein which constituted controlled rooms or housing accommodations units within the purview and meaning of the Act and Regulation in that said 190 rooms were occupied by persons who were not provided all of the following customary hotel services, to-wit: maid service, furnishing and laundering of linen, and use and upkeep of furniture and fixtures; and therefore said rooms, as controlled rooms or housing accommodations units hereunder, are not subject to decontrol under the Act and the Regulation. Attached hereto is a list of said rooms as are herein involved, which list is marked Exhibit A, made a part hereof, and hereby referred to for greater particularity.

14. Section 2 of the Regulation provides, in part, that regardless of any contract, agreement, lease or other obligation, heretofore or hereafter entered into, no person shall offer, demand or receive any rent for, or in connection with, the use or occupancy on and after July 1, 1947, of any room subject to the Regulation within the Defense-Rental Area higher than the maximum rents provided by the Regulation; and no person shall solicit, attempt, or agree, to do any of the. foregoing.

15. The Stipulated Facts dated December 8, 1947, on file and of record herein are as follows:

"It Is Hereby Stipulated by and between the parties through their respective attorneys that the Court, for the purpose of deciding whether to grant or deny each party's motion for a preliminary injunction, may consider all the files, records and pleadings herein, and may accept all statements in this stipulation as true and correct statements of fact.

"1. Ever since Hotel Leamington was built in 1912 it has been operated as both a transient and residential hotel in the sense that some rooms or units within the building have been occupied by transient guests paying on a daily basis and the other dwelling units consisting of 190 rooms each having a kitchenette and bath, have been occupied by residential or so-called 'permanent' tenants paying on a weekly or monthly rental basis. Many tenants now occupying permanent units have resided in them for many years. Hotel Leamington has always been commonly known as a hotel in the community in which it is located.

"2. It now is and for many years has been the established policy and practice of Hotel Leamington to charge tenants occupying the 190 dwelling units which contain kitchen and bath, on monthly and weekly rates based on a basic rental charge for the unit, plus additional rental charges for certain services if used by the tenant. The basic rental charge for each dwelling unit in the 190 permanent rooms involved here (subject to occasional exceptions) covers use of the unit space and use and upkeep furnished by the Hotel Leamington of carpets, a gas stove, an electric refrigerator, curtains or drapes, window shades and in

some cases Venetian blinds; but such basic rental charge does not include maid service, furnishing and laundering of linens, use and upkeep of regular furniture service. With respect to the same 190 units, the number of units in which each particular service was received on June 30, 1947 was as follows:

Maid service........................ 7
Furnishing and laundering of linen... 31
Telephone and secretarial or desk
 service ........................ 190
Use and upkeep of furniture and fix-
 tures ......................
 Complete furniture service...... ( 66)
 Partial furniture service........ (115)
Bellboy service ................... 190

"In the 190 dwelling units involved here 152 did not receive maid service, or furnishing and laundering of linen.

"In the 190 dwelling units involved here 117 did not receive maid service or use and upkeep of regular furniture service.

"In the 190 dwelling units involved here 93 did not receive furnishing and laundering of linen or use and upkeep of regular furniture service.

"An additional rental charge is added to the basic rental rate if the tenant uses regular furniture service, linen service or maid service. (As here used "regular furniture service" means use and upkeep furnished by Hotel Leamington of all articles of furniture and equipment that are necessary, in addition to the articles covered by the basic rental rate, to furnish the unit completely; "linen service" means regular and periodical furnishing and laundering by or at the expense of Hotel Leamington, of bed and table linen and towels; and "maid service" means daily sweeping, dusting, cleaning and bed-making by a maid employed by Hotel Leamington.) The amount of additional rental charge for each of these services, if used, varies with the size of the unit. In most one-room units (kitchenettes) with one single bed the monthly additional rental charge for regular furniture service is $5.00 and for linen service is $5.00 and for maid service is $5.00. If one-room kitchenette unit contains one double bed the charge for linen service is $7.50 and if it contains twin beds such charge is $10.00. If a unit comprises two or more rooms these additional rental charges are higher. For example, in a typical three-room unit including one living room and also two bed rooms (including kitchenette and bath) each containing one double bed, the basic rental rate might be $135.00, the rental charge for regular furniture service $15.00, the charge for maid service $15.00 and the rental charge for linen service, $15.00, making a total monthly rental charge for the unit and services $180.00. If both bedrooms contained twin beds this total rental charge would be increased to $185.00. If the tenant of a unit does not use one of these services he is not required to pay the additional rental charge for it. If he uses none of them he is required to pay only the basic rent for the unit.

"3. With respect to the 190 units mentioned in the complaint whose tenants on June 30, 1947 were actually using none or less than all of regular furniture service, linen service and maid service, each of these services then was and since has been available to the tenant in the sense that he might have requested and received it within a reasonable time if he agreed to pay the additional rental charge for it, but none of them was or has been available to the tenant if he would not agree to pay the additional rental charge for it.

"4. On and since June 30, 1947 there was available, to all occupants of the same 190 units, bellboy service in the sense that any of them might have requested and received the services of a bellboy without charge other than an optional tip to the bellboy, and also secretarial or desk service in the sense that any of them might have requested and received without charge any of the favors usually performed by employees at the Leamington Hotel desk, and also telephone service in the sense that any of them might have used a telephone maintained by Hotel Leamington in his unit (even though the tenant also had a private telephone) for house calls or incoming calls without charge, or for completed outgoing calls for a charge of 11 cents per call.

"5. On and since August 1, 1947 defendant has requested and billed and received from tenants of the same 190 units (except one unit, No. 943-45-47, in which there was

no increase) rents over and above the maximum rent in effect on June 30, 1947. On and since August 1, 1947 the tenants of the same 190 units (except possibly a few) continued to receive only the same services which they were receiving on June 30, 1947. Hotel Leamington has not refunded to the tenants all or any part of such increased rents collected since August 1, 1947.

"6. Plaintiff herewith reserves the right upon the hearing to question the legal sufficiency of the counterclaim, and to offer evidence to rebut or deny the allegations contained in paragraphs 20, 21 and 22, as well as other parts of the same.

"7. Each party hereto reserves the right to offer additional evidence by way of written documents and records, as well as the right to call witnesses and hear their testimony; all of the same shall be considered by the Court for the purposes of this action."

16. The defendant, in violation of said Regulation and Section 206(a) of said Act did beginning with on or about August 1, 1947, demand, receive, and has been collecting as rents herein, from tenants in 189 units of the 190 units involved herein, for the use and occupancy thereof, amounts in excess of the maximum legal rents established therefor by said Act and Regulation and is continuing to collect rents in excess of the maximum legal rents permitted in 189 units of the 190 units involved herein. Attached hereto and made a part hereof, is a schedule marked Exhibit B setting forth the numerical designation of some of the said rooms wherein the aforesaid violation occurred, the occupant or occupants thereof, the maximum rents established therefor by said Regulation, the rents demanded and received by the defendant in violation of said Regulation, the date and number of violations of said Regulations and the overcharges resulting therefrom.

17. That on or about July 21, 1947, defendant filed an application for decontrol on form D-95 with respect to all rooms in Hotel Leamington which plaintiff by the Complaint claims are not decontrolled. There is no evidence of any action taken by plaintiff with respect thereto. This application was filed in the time and manner prescribed by the Regulation.

18. Hotel Leamington contains 460 rooms which on June 30, 1947 were divided into 338 units. 190 of these units as listed in Exhibit A are those that have been ruled by the Area Rent Director as not decontrolled.

19. On September 29, 1947 at the request of the Area Rent Director defendant filed a new application for decontrol on revised form D-95.

20. On October 16, 1947 the Area Rent Director issued and delivered to defendant an order on form D-27C stating that the 190 units listed in Exhibit A herein were not decontrolled because these units did not on June 30, 1947 receive all five of the so-called specified services, viz., maid service, furnishing and laundering of linen, telephone and secretarial or desk service, use and upkeep of furniture and fixtures, and bellboy service.

21. The maximum rents that defendant is permitted to charge under said Act and Regulation, as amended, are established by the registration statement filed by the defendant in the Area Rent Office as thereafter adjusted and increased by orders of the Rent Director. In addition, because of defendant's history and practice prior to rent control in making a separate charge for maid service, linen service, and use of furniture, such extra charges were not reflected on the registration statement or orders adjusting rent for the 190 units involved herein. However, a blanket order issued by the Area Rent Director determined the amount that defendant was permitted to charge extra, over and above the registered rates and rates established by orders increasing the rents, if the tenants in the 190 units herein involved did actually use maid service, linen service, or furniture.

### Conclusions of Law

1. This Court has jurisdiction of the parties to, and the subject matter of, this action by virtue of Section 206(b) of the Housing and Rent Act of 1947.

2. The Housing and Rent Act of 1947 is constitutional. It is a proper exercise of the war powers of Congress. It does not violate due process. Congress did not ex-

ceed its legislative powers as the Act is not an unconstitutional delegation of legislative authority to an administrative body.

3. Section 204(d) of the Act expressly authorized the Housing Expediter to issue such regulations and orders consistent with the provisions of the Act as he may deem necessary to carry out the provisions of Section 204 and Section 202(c). The Rent Regulation for Controlled Rooms in Rooming Houses and Other Establishments (12 F.R. 4302) and Amendment 1 to said regulation issued August 8, 1947, (12 F.R. 5457) are consistent with Section 204 of said Act and are necessary to carry out the provisions of Section 204 as well as Section 202 (c) of the Act. The Housing Expediter had the right to promulgate said Regulation and amendment and said Regulation and Amendment as applied by the Housing Expediter towards the defendant are not inconsistent with the Act and are valid.

4. Amendment 1 to said Regulation, issued and effective August 8, 1947 (12 F.R. 5457) is a valid exercise of the regulatory powers of the Housing Expediter and does not retroactively determine defendant's rights under the law in an illegal manner.

5. The order of the Area Rent Director issued by him on October 16, 1947, on form D-27C ruling that the 190 units listed in Exhibit A herein were not decontrolled because these units did not on June 30, 1947 receive all five of the so-called specified services, viz., maid service, furnishing and laundering of linen, telephone and secretarial or desk service, use and upkeep of furniture and fixtures, and bellboy service, is a valid administrative order and expressly authorized by Section 204(d) of the Act and said Regulation as amended as the Housing Expediter deemed it necessary in order to effectively carry out the provisions of Section 204 and Section 202(c) of the Act and the Regulation as amended.

6. That at all times from and after July 1, 1947 the 190 units involved herein in the Hotel Leamington consitute housing accommodations under the Housing and Rent Act of 1947 and the Rent Regulation for Controlled Rooms in Rooming Houses and Other Establishments, as amended, and are still subject thereto.

7. That said 190 units in Hotel Leamington are not free from rent controls or eligible for decontrol under the provisions of Section 202(c) of the Housing and Rent Act of 1947 or said Regulation as amended.

8. That on and after July 1, 1947 the highest maximum rentals that defendant could legally collect from the tenants of said 190 units were the maximum rentals in effect for such housing accommodations on June 30, 1947.

9. That the defendant has been and is violating the provisions of the Housing and Rent Act of 1947 by demanding, accepting and receiving for 189 of such housing accommodation units, rentals therefor in excess of those permitted by said Act and Regulation, as amended.

10. Plaintiff is entitled to an interlocutory judgment for and on behalf of the United States and against the defendant for a temporary injunction under Section 206 (b) of the Housing and Rent Act of 1947 temporarily enjoining the defendant, its agents, servants, and employees, and all persons acting in concert or participation with the defendant, or any one of them, until final disposition of this cause or further Order of this Court, from: Soliciting, demanding, accepting or receiving, directly or indirectly, as rent for the use and occupancy of the controlled rooms or housing accommodations units in the structure referred to in the complaint as the Hotel Leamington, and which said controlled rooms or housing accommodations units are more particularly set forth in the schedule hereto attached, made a part hereof, and marked Exhibit A, any amounts in excess of the maximum legal rent established and prescribed by the Housing and Rent Act of 1947 and the Rent Regulation for Controlled Rooms in Rooming Houses and Other Establishments, as heretofore or hereafter amended, or in excess of the maximum legal rent established or prescribed by any other Regulation or Order heretofore or hereafter issued pursuant to the Housing and Rent Act of 1947 or the Regulation as heretofore or hereafter amended or superseded.

Let interlocutory judgment be entered accordingly.

# EXHIBIT A

## Hotel Leamington

### Schedule
### of Controlled Rooms

| | | | | |
|---|---|---|---|---|
| 401–3 | 719–21 | 939–41 | 314 | 338 |
| 601–3 | 1019–21 | 1039–41 | 414 | 438 |
| 701–3 | | | 514 | 538 |
| 801–3 | 321 | 343 | 614 | 738 |
| 901–3 | 421–23 | 443–45 | 714 | 838 |
| 1001–3 | 521 | 643–45 | 814 | |
| | 821 | 1043–45 | | 240–42 |
| 505 | 921 | 943–45–47 | 218 | 340–42 |
| 705 | | 843–45–47–50 | 318 | 640–42 |
| 805 | 523–25 | 743–45 | 418 | 740–42 |
| 905 | 923–25 | 447 | 518 | 840–42 |
| | 223–25 | | 618 | 940–42 |
| 307–9 | | 249 | 718 | |
| 507–9 | 425 | 649 | 818 | 244 |
| 607–9 | 625 | 849 | 918 | 744 |
| 707–9 | 1025 | 949 | 1018 | 844 |
| 807–9 | | 449–51–53 | | 944 |
| 907–9 | 327–31–33 | 1049–51–53–50 | 220 | 1044 |
| | 427–31–33 | | 820 | |
| 211–13 | 527–31–33 | 651–53 | 920 | 246 |
| 311–13 | | 851–53 | 1020–22 | 946 |
| 411–13 | 1031–33 | 951–53 | | 1046 |
| 611–13 | 231 | | 422 | |
| 711–13 | 233 | 302 | 622 | 348 |
| 811–13 | | 402 | 722 | 448 |
| 911–13 | 235 | 502 | | 548 |
| 1011–13 | 335 | 702 | 524 | 848 |
| | 635 | 902 | 724 | 948 |
| 215 | 735 | | | 1048 |
| 215A–17 | 835 | 802–4 | 1032 | |
| 315–15A | 935 | | 432 | 550 |
| 415–15A | 1035–37A | 206 | | 650 |
| 515–15A | | 506 | 234 | 750 |
| 615–15A | 237–A | | 334 | |
| 715–15A | 337–A | 208 | 434 | 452–A |
| 815–15A | 437–A | | 534 | 652–A |
| 915–15A | 537–A | 210 | 734 | 752–A |
| 1015–15A | 837–A | 510 | 834 | 852–A |
| | 937–A | 910 | 934 | 952–A |
| 517 | | | 1034 | 1052–A |
| 617 | 239–41 | 312 | | |
| 817 | 339–41 | 512 | 236 | |
| 317–19 | 439–41 | 612 | 736 | |
| 917–19 | 539–41 | 712 | 836 | |
| | 639–41 | 812 | 1036 | |
| 519 | 739–41 | | | |
| 819 | 839–41 | 214 | 238 | |

## EXHIBIT B

### Hotel Leamington

#### Schedule of Violations in Controlled Rooms

| Room No. | Tenant | Maximum Rents | Rentals Demanded & Received | Period Involved | Over-charges |
|---|---|---|---|---|---|
| 439–41 | Mame D. Conway | $ 73.00 | $110.00 | 8/1/47 to 11/1/47 | $148.00 |
| 512 | Agnes Carey | 54.00 | 70.00 | 8/1/47 to 11/1/47 | 60.00 |
| 649 | James W. Willis | 77.50 | 97.50 | 8/1/47 to 11/1/47 | 80.00 |
| 618 | Victor G. Nelson | 53.50 | 70.00 | 8/1/47 to 11/1/47 | 66.00 |
| 640–42 | Edward A. Paul | 73.00 | 100.00 | 8/1/47 to 11/1/47 | 108.00 |
| 910 | A. Michelsen | 58.50 | .80.00 | 8/1/47 to 11/1/47 | 86.00 |
| 940–42 | Mrs. H. H. Tanner and Nancy Oglevee | 72.00 | 100.00 | 8/1/47 to 11/1/47 | 112.00 |
| 848 | Ellen D. Malthouse | 47.00 | 75.00 | 8/1/47 to 11/1/47 | 112.00 |
| 539–41 | Marion G. Zimmerman | 77.00 | 110.00 | 8/1/47 to 11/1/47 | 132.00 |
| 905 | Litella Colburn | 57.00 | 80.00 | 8/1/47 to 11/1/47 | 92.00 |
| 1015–15A | Mrs. Frank Warden | 94.00 | 120.00 | 8/1/47 to 11/1/47 | 104.00 |
| 335 | Sam Gunzberg | 62.00 | 80.00 | 8/1/47 to 11/1/47 | 72.00 |
| 819 | Helen Brockway | 47.50 | 65.00 | 8/1/47 to 11/1/47 | 70.00 |
| 215A–17 | Mary and Hortense Ford | 69.00 | 100.00 | 8/1/47 to 11/1/47 | 124.00 |
| 835 | J. J. Sweeney | 62.00 | 80.00 | 8/1/47 to 11/1/47 | 72.00 |
| 348 | Jean W. Taylor | 60.00 | 80.00 | 8/1/47 to 11/1/47 | 80.00 |
| 307–09 | William K. Berger | 135.00 | 190.00 | 8/1/47 to 11/1/47 | 220.00 |
| 311–13 | William E. Murphy | 81.00 | 100.00 | 8/1/47 to 11/1/47 | 76.00 |
| 738 | Alvena M. Blanchette | 47.00 | 70.00 | 8/1/47 to 11/1/47 | 92.00 |
| 750 | Julia Allen Clark | 57.00 | 80.00 | 8/1/47 to 11/1/47 | 92.00 |
| 714 | Florence C. McGee | 55.00 | 75.00 | 8/1/47 to 11/1/47 | 80.00 |
| 518 | Elizabeth Carey | 53.50 | 70.00 | 8/1/47 to 11/1/47 | 66.00 |
| 523 | Millie Brock | 52.00 | 60.00 | 8/1/47 to 11/1/47 | 32.00 |
| 223–25 | Edna Larson and Mrs. H. C. Read | 87.00 | 110.00 | 8/1/47 to 11/1/47 | 92.00 |
| 510 | Mrs. Gudrun L. Thoen | 57.00 | 80.00 | 8/1/47 to 11/1/47 | 92.00 |
| 214 | M. Olive Tuttle | 43.50 | 60.00 | 8/1/47 to 11/1/47 | 66.00 |
| 434 | Iva M. Close | 56.00 | 75.00 | 7/1/47 to 11/1/47 | 95.00 |
| 820 | Mrs. W. R. Davis | 56.00 | 70.00 | 8/1/47 to 11/1/47 | 56.00 |
| 814 | Mrs. S. H. Reinhard | 52.00 | 75.00 | 7/1/47 to 11/1/47 | 115.00 |
| 234 | Cecelia Hagemeyer | 42.00 | 60.00 | 8/1/47 to 11/1/47 | 72.00 |
| 611–13 | Ethel Hauser | 77.00 | 100.00 | 8/1/47 to 11/1/47 | 92.00 |
| 425 | Maria Lynch | 52.00 | 65.00 | 8/1/47 to 11/1/47 | 52.00 |
| 934 | Dora Williams | 56.00 | 75.00 | 7/1/47 to 11/1/47 | 95.00 |
| 327–31–33 | Helen B. Colman | 166.00 | 190.00 | 8/1/47 to 11/1/47 | 96.00 |
| 447 | Virginia R. Bockman | 64.00 | 80.00 | 8/1/47 to 11/1/47 | 64.00 |
| 443–45 | Ernest L. Robinson | 141.00 | 175.00 | 8/1/47 to 11/1/47 | 136.00 |
| 1011–13 | Alice F. Lewin | 78.50 | 100.00 | 8/1/47 to 11/1/47 | 86.00 |

Total: $3385.00